No. 45,762

Timothy R. Baze, *Appellee,* v. Mira Groff and Fred Groff, *Appellants.*

(473 P. 2d 59)

 Opinion filed July 17, 1970. 

*Richard C. Dearth,* of Parsons, argued the cause, and *Glenn Jones,* of Parsons, was with him on the brief for the appellants.

*Payne H. Ratner, Jr.,* of Ratner, Mattox, Ratner, Ratner and Barnes, of Wichita, and *Jack L. Goodrich,* of Parsons, argued the cause and were on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an automobile negligence action brought by the plaintiff to recover damages for the loss of a leg sustained when his motorcycle collided with the rear end of an automobile driven by the defendant, Mira Groff. The case was tried to the court and judgment was entered against the defendants for the sum of $19,050 and costs. Appeal has been duly perfected.

The basic questions presented are: (1) Whether there is sufficient evidence to sustain the trial court's finding that Mira Groff was negligent; and (2) whether the plaintiff was guilty of contributory negligence as a matter of law which was a proximate cause of the collision.

The evidence disclosed that on the night of the accident Timothy R. Baze (plaintiff-appellee) was driving a new Honda motorcycle which he had owned about two weeks. The cycle was in good working condition. When Baze got off work he picked up Ron May and then met four other youths with motorcycles. Baze and his companions then started to proceed east on U. S. Highway No. 160 enroute to Bob's Club located two miles east of Parsons, Kansas. It was dark, the weather was clear, and the pavement was dry. The speed limit on the highway was 50 m. p. h. at the scene of the accident.

The motorcycles were noisy because they did not have baffles in the exhaust pipes. There were five motorcycles in the group as they proceeded east on U. S. Highway No. 160 at a speed estimated at 40 to 50 m. p. h. All motorcycles were traveling in the same lane of traffic with Jim Colvin in the lead. Approximately 150 feet behind Colvin, Bill Schneickert followed near the shoulder of

the highway. Baze, with whom Ron May was riding, was about a cycle length behind Schneickert and near the center of the road in the eastbound lane of traffic. Sam Ringle followed behind the plaintiff at some distance, and Doyle Saye brought up the rear. Baze testified it was good practice to ride in staggered fashion so as to avoid a collision with the back of another cycle.

The relative positions and noise of the five motorcycles apparently gave one of the defendants' witnesses the impression the plaintiff and his companions were racing. There was testimony, however, that there was no racing or cutting up or anything of that nature on the highway as the boys traveled eastward. The plaintiff explained that when you are out on the highway and getting up speed, you lean your shoulders toward the front of the motorcycle to resist wind and bugs. This was the manner in which they were riding the cycles.

At the time of the accident Mira Groff (defendant-appellant) was proceeding east of Parsons on Highway No. 160 enroute to the miniature golf course, located on the north side of the highway, and had stopped her car on the highway at the entrance to the golf course. The car in front of her going in the same direction was also turning left across oncoming traffic into the golf course. After the car in front of Mrs. Groff had made its left turn, Mrs. Groff had to wait for a vehicle coming from the east in the opposite lane of traffic before she could turn into the driveway of the golf course. It was while Mrs. Groff was in this stopped position in the right-hand lane of traffic on the highway that the accident occurred.

As Baze approached the scene of the accident he testified as follows:

"As we were going east, Colvin was in the lead and I seen a slight commotion from his motorcycle and then as I neared the car I seen the left rear tail light and when I was even closer to it I realized that it wasn't moving. So I was left with the alternative of either going left or to the right side of the car, but there was a truck coming, so I had to go to the right, because I was too close to it to stop and there wasn't enough room to miss it, so I nicked her right side.

". . . As you are going east, your lights on the motorcycle are going slightly down. There were no lights on the right rear of the car being driven by Mrs. Groff nor were there any signal light or brake lights on either side of the rear of the automobile.

"I couldn't go off the shoulder to the right because of Schneickert and I couldn't lock my brakes or I would have slid sideways under the car. So I

stopped as much as I could before turning as sharp as I could. I didn't want to run into Bill. I had caught up with him by this time and I attempted to go between him and the car.

"The Groff car was stopped in the center of the south lane of the highway. There was no room in the south lane of the highway for me to stay on the highway without hitting the car. I couldn't go left because there was a big truck coming—a diesel truck. I noticed the truck just before the accident but I didn't have any reaction time at that time. It was just before the impact that the truck went by. The truck had its headlights on.

"Q. What effect, if any, did that have upon your seeing or not seeing the automobile stopped on the highway?

"A. It would have definitely affected it, because it would draw more attention to them than to a small tail light.

"Q. If there had been another tail light or brake light on that automobile, would you have been able to have seen them in order to avoid the collision?

"A. Yes, I would.

"Q. What if there had been turn indicators on, what effect would that have?

"A. I could have avoided it."

Schneickert testified he was between 25 and 50 feet from the Groff automobile when he first saw that taillight, and that he came within three feet of hitting the car himself.

Colvin had taken to the ditch on the right side of the road and missed hitting the Groff automobile.

Mira Groff testified that before stopping she signaled with her arm for a left-hand turn, and there was no traffic immediately behind her. Schneickert testified he did not see Mrs. Groff signal.

The sheriff testified he investigated the accident and found that the left taillight on the Groff car was burning and the right taillight was broken. A check of the brake lights and the directional lights indicated that neither light system would operate. This testimony concerning the defective lights on the rear of the Groff vehicle at the time of the collision was corroborated by several witnesses.

Baze sustained severe injuries to his left ankle. After extensive hospital and medical treatment for approximately three years, his left leg was amputated about seven inches below the knee. It was stipulated that his hospital bills totaled $6,050.10.

The case was tried to the court and judgment was entered for the plaintiff after previously overruling the defendants' motion for a directed verdict and judgment at the close of the plaintiff's evidence. The defendants' motion for a new trial and to set aside the findings of fact were also overruled.

In making its decision the trial court found:

"The court . . . finds generally in favor of the Plaintiff and against

the Defendants. That Defendant, Mira Groff, negligently stopped the automobile of Defendants in the highway without visible and proper signal of her intention to stop; and without visible and proper signal of her intention to make a left turn; and was at the time of the collision driving said automobile with defective brake lights and defective turn indicators; all of which said negligence of the Defendant, Mira Groff, was the proximate cause of Plaintiff's injuries and damage. . . ."

The appellants first contend the trial court erred in finding that Mira Groff was negligent in stopping her automobile on the highway without visible and proper signal to stop and without visible and proper signal to make a left turn.

The appellants argue the "Groff car was forced to stop in the highway because of a car ahead of her stopping and a car coming toward her going the opposite direction and she gave an arm signal of this stopping and turning and the trial court said this was negligence."

In ruling on a motion for a directed verdict the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought, and where the evidence is such that reasonable minds could reach different conclusions thereon, the motion must be denied and the matter submitted to the jury. (*Williams v. Benefit Trust Life Ins. Co.*, 195 Kan. 579, 583, 408 P. 2d 631.)

Therefore, under the rule to be applied in the instant case, the court in testing the sufficiency of the plaintiff's evidence shall consider all of the plaintiff's evidence as true, shall consider that favorable to the plaintiff, together with all reasonable inferences to be drawn therefrom and disregard that unfavorable to the plaintiff, and shall not weigh any part that is contradictory, nor weigh any differences between direct and cross-examination, and give the evidence of the plaintiff a liberal construction resolving all doubt against the defendants, and if so considered there is any evidence to support the findings of the trier of the facts, such findings must be sustained.

The appellants' reasoning proceeds on the premise that Mira Groff exercised reasonable care by merely extending her "arm for the turn" before stopping.

The statutory duty relative to stopping on the highway is stated in K. S. A. 8-547 (*c*), which reads:

"(*c*) No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the

driver of any vehicle immediately to the rear when there is opportunity to give such signal."

K. S. A. 8-549 deals with the methods of giving stop or turn signals. The pertinent portion of this statute reads:

". . . (1) Left turn—hand and arm extended horizontally. . . . (3) Stop or decrease of speed—hand and arm extended downward. . . ."

The recent case of *Johnston, Administratrix v. Ecord,* 196 Kan. 521, 412 P. 2d 990, examines in depth the duty of a motorist who stops on the highway.

In the instant case the plaintiff's evidence disclosed the defendant, Mira Groff, stopped on a two-lane highway at night, where vehicles could be expected to be traveling 50 m. p. h. intending to turn into a private entrance rather than at an intersection of two public roads. Under the rule heretofore stated, the finding of the trial court that Mira Groff was negligent in stopping her vehicle on the highway without proper signal of her intention to stop is sustained by the evidence.

The record would support a finding that Mira Groff gave no arm signal whatever. But even assuming that she did give an arm signal for a left turn, there is no evidence, nor does she claim, that a proper arm signal was given of her intention to stop on the highway.

The appellants next contend the trial court erred in concluding as a matter of law that it constitutes negligence to operate a motor vehicle with defective brake lights and defective turn indicators.

The thrust of the appellants' argument on this point is that K. S. A. 8-549 authorizes the giving of turn and stop signals by arm. It is argued there is no statutory requirement that a motor vehicle have brake lights or turn indicator lights.

An extended discussion of the appellants' argument on this point would be purely academic in view of our conclusion on the first point.

The appellants next contend the trial court erred in holding that recovery by the plaintiff was not barred by his own negligence in not having his motorcycle under control, in not seeing what he should have seen, and in not slowing the same down in order to avoid the accident.

The appellants argue that the two cycles which were ahead of Baze, and closer to the stopped automobile than Baze, both saw the Groff automobile and did not strike it; that it was only Baze

who, having more time than either of the two cycles ahead of him, failed to observe the road ahead, and is also the only cycle which did not stop and did not turn aside. It is argued that nothing the Groff car did or did not do prevented Baze from seeing because the other two cycles on the road ahead of him did see. The appellants contend upon the evidence presented by the record that Baze was not using due care—that he was not looking ahead, that he was leaning over in a lying-down position with no windshield and no goggles, and that he just was not looking.

The appellants cite *Gabel v. Hanby,* 165 Kan. 116, 193 P. 2d 239; and *Orr v. Hensy,* 158 Kan. 303, 147 P. 2d 749, for the proposition that it is the duty of one driving an automobile upon the public highway to look ahead and see what is there to be seen in his line of vision, and in case of accident he will be conclusively presumed to have seen what he could and should have seen in the proper performance of his duty. The appellants also cite *Harrison v. Travelers Mutual Cas. Co.,* 156 Kan. 492, 134 P. 2d 681, for the proposition that the driver of a motor vehicle must keep his vehicle under such control as will enable him to articulate his speed with his ability to stop or turn aside within the range of his vision provided by his headlights.

Finally it is argued by the appellants that Baze's negligence contributed to his injury and was a proximate cause thereof. (Citing, *Crawford v. Miller,* 163 Kan. 718, 723, 186 P. 2d 116.)

The law is well established that the operator of an automobile on a public highway may assume others using the highway will observe the laws of the road, and he is not guilty of contributory negligence in such an assumption unless and until he has knowledge to the contrary. The duty of care between persons using the public streets or highways is mutual, and any such person may assume that others traveling on the public streets or highways will comply with the obligation imposed upon them. A driver of a motor vehicle has the right to act upon the assumption that every person whom he meets will exercise ordinary care and caution according to the circumstances and will not negligently and recklessly expose himself to danger, but rather make an attempt to avoid it. (*Gibbs v. Mikesell,* 183 Kan. 123, 325 P. 2d 359.) The same rule applies to the operator of a motorcycle on the public highways.

In determining whether as a matter of law a plaintiff is guilty of contributory negligence precluding his recovery, all of the testimony favorable to the plaintiff, together with all the reasonable

inferences and deductions to be drawn therefrom, must be accepted as true, and if there is any evidence to support the finding made by the trier of the facts that the plaintiff is not guilty of contributory negligence, the finding must be sustained. When the plaintiff's evidence does not disclose his contributory negligence as a matter of law, the trier of the facts has an absolute right to disbelieve and disregard all evidence tending to establish its existence. (*Drake v. Moore*, 184 Kan. 309, 336 P. 2d 807; and *Deemer v. Reichart*, 195 Kan. 232, 404 P. 2d 174.)

Here the plaintiff was driving down a two-lane highway at a lawful rate of speed after dark with the headlight on his motorcycle illuminated, following Schneickert's cycle which was about 10 feet ahead of him, and he approached the Groff vehicle which was stopped on the traveled portion of the highway with only the left rear taillight burning. A large diesel truck was approaching from the opposite direction with its headlights illuminated. Schneickert managed to avoid a collision, but only by about three feet, and wound up in the ditch. Colvin also avoided a collision by going into the ditch on the right side of the highway. The plaintiff applied only his rear brake because, if he locked his front wheel brake while making an effort to turn aside to avoid a collision, his motorcycle would slide under the Groff car. Baze testified if the Groff vehicle had another taillight or brake light or turn signal illuminated, he could have seen it and avoided the accident.

In view of this evidence, reasonable minds could differ on the question of contributory negligence, and therefore such question was properly determined by the trier of the facts.

This is not a case where it can be said as a matter of law that Baze was driving in such a manner that he could not, under the circumstances, have controlled his vehicle within the range of vision of his headlights, nor is it a situation where Baze drove blindly ahead after he knew or should have known that he had no vision. (*Deemer v. Reichart*, supra.)

Every motorist realizes from common experience that the passing of an approaching automobile with its bright headlights turned on, very frequently, if not always, causes a driver's vision to be temporarily impaired to some extent. (*Newman v. Case*, 196 Kan. 689, 413 P. 2d 1013.)

A motorist driving on a highway at a reasonable rate of speed at night is not required, when an approaching vehicle appears with

bright headlights, to stop his vehicle because the range of his vision is thereby impaired. If this were required, it would be impossible to travel at any distance on two-lane highways at night. The question under these circumstances resolves itself into one of reasonable care under all the circumstances. (*Anderson v. Thompson,* 137 Kan. 754, 756, 22 P. 2d 438.)

In *Drennan v. Penn. Casualty Co.,* 162 Kan. 286, 176 P. 2d 522, the court said:

"Furthermore, we have recognized qualifications or exceptions to the general rule that a driver must be able to stop his car within the clear distance ahead. For instance, if he is confronted with a sudden emergency not of his making—such as the sudden entrance of another car from a side road—it would be wholly unreasonable to say, and we have not said, that negligence is shown, as a matter of law, if he is unable to stop his car in time to avoid a collision. It is perhaps inaccurate to say that such situations constitute exceptions to the rule. It might be more accurate to say that the rule was never intended to apply except to situations which an ordinarily prudent man would or should anticipate. In this class of 'exceptions,' so-called, is the case where a driver is *suddenly* confronted with blinding lights of an approaching car. The inapplicability of the general rule to such a situation was recognized in the recent case of *Towell v. Staley,* 161 Kan. 127, 166 P. 2d 699, which is closely analogous to the one before us, and in which citations of numerous cases equally pertinent here may be found. In that case there was also a collision with a truck parked on the highway, without lights. Blinded by the lights of another car, the plaintiff did not see the truck until he had passed the lights of the other car. Giving the plaintiff the benefit of a favorable interpretation of the evidence, we said: (p. 136.) 'The inference in the present case favorable to the plaintiff is that he was only blinded as he passed the bright lights,' and refused to hold him guilty of contributory negligence as a matter of law. This is in line with the sound rule that questions of negligence are ordinarily for the trier of the facts, and that such questions should not be withdrawn from the jury except where the acts of commission or omission have been such that a court can say that it is clear that no man of ordinary prudence would have committed them under the attendant and undisputed facts and circumstances. . . ." (pp. 289, 290.)

The above rule was affirmed in *Winfough v. Tri-State Insurance Co.,* 179 Kan. 525, 297 P. 2d 159, Syl. ¶ 2, as follows:

"The general rule is that the operator of a motor vehicle is required to articulate his speed with his ability to stop within the range of his vision, and not to strike or collide with obstructions or other vehicles in his lane of traffic, but there are exceptions to that rule arising out of a sudden change in the operator's situation but not caused by his own failure or neglect, such as blinding lights of oncoming cars, or changes in grade, causing the obstruction to be hidden."

Essentially this is a fact case which was fairly tried and submitted to the trial judge for decision. The court found generally for the plaintiff on all issues. Upon review we find no error in the record.

The judgment of the lower court is affirmed.