No. 46,185

DAVID HILL, By and Through His Next of Friends and Natural Guardians, Paul Hill and Mary Hill, *Appellee*, v. WILLIAM A. WYMER and LOUISE HARMON, *Appellants*.

MICHAEL HILL, By and Through His Next Friends and Natural Guardians, Paul Hill and Mary Hill, *Appellee*, v. WILLIAM A. WYMER and LOUISE HARMON, *Appellants*.

PAUL HILL and MARY HILL, As Parents and Heirs of Deceased Theresa Hill, *Appellees*, v. WILLIAM A. WYMER and LOUISE HARMON, *Appellants*.

(493 P. 2d 224)

Opinion filed January 22, 1972.

*Howard Harper*, of Junction City, argued the cause, and *Lee Hornbaker, Richard F. Waters* and *Bob Abbott*, all of Junction City, were with him on the brief for the appellant, William A. Wymer.

*Harold E. Doherty*, of Topeka, argued the cause and was on the brief for the appellant, Louise Harmon.

*Edwin D. Smith*, of Topeka, argued the cause, and *David H. Fisher, Donald Patterson* and *Charles K. Sayler*, all of Topeka, were with him on the brief for the appellees.

The opinion of the court was delivered by

FOTH, C.: The ultimate issue on this appeal is whether both drivers or only one should be liable for the injuries sustained by passengers in one of two cars involved in a head-on collision.

In the court below three cases were consolidated for trial and they come to this court as a single case. The plaintiffs were David and Michael Hill, minors, and their parents as heirs at law and next of kin of Theresa Hill, who died as a result of the collision. The defendants were Mrs. Louise Harmon, driver of the car in which the three Hill children were passengers, and William A. Wymer, driver of the other car. The defendants, who are the principal actors, will be referred to by name.

The collision occurred at about 3:15 p. m., on March 15, 1967,

at a point approximately 6.3 miles east of Manhattan, Kansas, on U. S. Highway No. 24, an east-west two lane road. Wymer was proceeding east when Mrs. Harmon, with the Hill children, came onto the highway from the north and turned west. Mrs. Harmon thought that after entering the highway she was in her lane *following* a car whose chrome shone in the sun. When she realized the car was *approaching* her, she turned to her *right*. Wymer testified that he was in his lane and had seen the Harmon car come onto the highway, and that it suddenly swerved to its *left* into his lane. He turned to *his left*, and the two cars met. This case ensued.

The consolidated case was tried to a jury, which returned a verdict in favor of each plaintiff and against both defendants. Both defendants filed notices of appeal, but only Wymer designated any points to be relied on in this court. Mrs. Harmon filed a brief and appeared in this court in her nominal capacity of an appellant, but seeks to uphold the judgment rendered below. She has therefore abandoned her appeal and is regarded as an appellee.

Wymer's "points relied on" are that the trial court erred in overruling his several motions below: (1) for a directed verdict at the close of plaintiffs' case, (2) for directed verdict at the close of all the evidence, (3) to set aside the answers of the jury to special questions, and (4) for judgment or for a new trial.

The thrust of each of Wymer's four points is that *he was not negligent* but Mrs. Harmon *was*. In his brief he distills his argument to two questions:

"1. Does the doctrine, or rule, of sudden emergency apply in this case? And,

"2. Was the special verdict as to defendant Wymer contrary to the evidence?"

These questions, we believe, were fully answered by the trial court when it overruled Wymer's post-trial motions. Its memorandum adequately summarizes the evidence and the inferences to be drawn therefrom; it also deals with both the "emergency" and "no evidence" arguments advanced by appellant in a manner we would be hard put to improve upon. We therefore quote the pertinent portion:

Wymer's first complaint deals with the answers of the jury to the following questions:

"1. Was William A. Wymer negligent in the operation of his automobile, which negligence was a direct cause of the collision?

Answer: 'Yes'.

2. If you answer Question No. 1 'yes', then state of what said negligence consisted.

Answer:

'1. Failure to maintain a proper lookout.'

'4. Failing to stop or turn aside to avoid the collision.' "

Wymer contends these answers are in direct violation of the evidence and are contrary to the evidence and are in disregard to the Court's instruction, No. 12, which was an instruction under the emergency doctrine.

At the outset, it must be observed that none of the parties have any objection to any of the instructions.

The jury also found that defendant Harmon was negligent in the following respects:

"1. Driving her car across the center line of said highway and into the eastbound traffic lane, therefore, directly in front of William A. Wymer's vehicle.

2. Failing to keep a proper lookout for other cars properly on the highway.

3. Failing to keep her car under control.

4. Failing to reduce her speed.

5. Failing to turn aside to avoid the collision.

7. Failing to yield the right of way to William A. Wymer's vehicle."

Wymer contends the answers of the jury charging him with negligence, particularly in light of the answers of the jury charging Harmon with negligence, are not supported by the evidence, and are contrary to the evidence.

The evidence was uncontradicted that there were no tire marks for either car prior to the collision; there was evidence by the Highway Patrol Officers that the collision occurred in the westbound (Harmon's) lane of traffic; there was evidence by Wymer's expert (Razak) that the collision between the vehicles occurred substantially in the center of the highway, with Wymer's vehicle pointed slightly northeasterly, and Harmon's vehicle pointed slightly northwesterly. Wymer testified he was traveling east in his own lane of traffic, being closer to the shoulder of the road than to the center line of the highway in his lane of traffic; that the Harmon vehicle approached from the east, going west; both vehicles traveled at approximately 50 miles per hour, approaching each other; when the Harmon vehicle was approximately 50 feet distant from the Wymer vehicle, the Harmon vehicle swerved south across the center line; Wymer drew a sketch of Harmon's swerve, showing approximately a 40-degree turn to its left. Wymer

testified the shoulder on the south side of the road was six or seven feet wide, and there were no obstructions on the shoulder. Wymer's wife had time to observe Harmon swerve into Wymer's lane of traffic, and had time to exclaim: "Oh, my Lord, what are they trying to do to us?" This was before the collision. Wymer testified that he turned left in an effort to avoid the Harmon vehicle. Wymer did not apply his brakes. Under all the testimony, the collision occurred substantially in the center of the roadway. Evidence was adduced to the effect that it was impossible for these vehicles to so maneuver within the short distance described by Mr. Wymer, and the closing speed of the vehicles would bear this out. Closing speed indicated would be in the nature of 140 feet per second. Yet, Wymer testified he had time to observe Harmon's swerve, had time to react, had time to swerve his own car from a point nearer the shoulder than to the center line, over to substantially the center of the highway; Wymer testified that his wife had time to observe the swerve of Harmon's vehicle, and make the above exclamation prior to the collision.

The jury did find that Harmon swerved into Wymer's lane of traffic. The jury, however, did not find the point of impact was in Harmon's lane of traffic.

The jury concluded that Wymer's lookout was not what it should have been and found that Wymer should have stopped or turned aside. Of course, it would have been impossible for either vehicle to have stopped, but the jury's specifications of negligence are in the exact words of the parties' charges of negligence and of the court's instructions. It is within the evidence, and the jury could very well have found that Wymer's turn to the left into the center of the highway was negligence. There was no obstruction to the shoulder of the road; the jury, within the evidence, could have found that a turn to the right, or in fact, no turn at all on Wymer's part, would have been in order under the circumstances then existing. Instruction No. 12, contrary to the interpretation placed upon it by Wymer, does not say, and the law does not say, that under such circumstances, Wymer had a right to swerve his car to the left. The law and the instruction was that under these circumstances, Wymer was required to exercise such care as an ordinary person would exercise when confronted by a like emergency under circumstances then existing. The jury obviously found that Wymer did not have his car under control, and did not ex-

ercise such care as an ordinary person would exercise when confronted with a like emergency under circumstances then existing.

The Court is of the opinion that the jury's specifications of negligence are consistent and are within the evidence.

To summarize, the trial court's answers to appellant Wymer's questions, which we approve, are:

(1) "Yes," the doctrine of emergency was applicable to the situation. The jury was so instructed, and even so it found him guilty of negligence.

(2) "No." On the contrary, there *was* evidence to support the jury's special verdict that Wymer was negligent.

Having found evidence to support the jury's finding of appellant's negligence, our function on this appeal is fulfilled. See, *Abston v. Medora Grain, Inc.,* 206 Kan. 727, 482 P. 2d 692; *Baze v. Groff,* 205 Kan. 736, Syl. ¶ 2, 473 P. 2d 59.

The judgment is affirmed.

APPROVED BY THE COURT.