No. 46,311

Gladys Naomi Tos, *Appellee,* v. Clyde H. Handle, *Appellant.*

(495 P. 2d 896)

Opinion filed April 8, 1972.

*H. E. Jones,* of Hershberger, Patterson, Jones and Thompson, of Wichita, argued the cause, and *Stephen Jones,* of the same firm, was with him on the brief for the appellant.

*M. William Syrios,* of Michaud and Cranmer, of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Foth, C.: This is an automobile collision case in which the jury returned a verdict for the plaintiff and the defendant appeals. Two grounds are urged for reversal: (1) that plaintiff was guilty of contributory negligence as a matter of law; and (2) that the jury was guilty of misconduct for which the trial court should have ordered a new trial.

Appellant concedes that if he is to prevail on his first contention, encompassing his motions for a directed verdict at the conclusion of plaintiff's case and at the close of all the evidence, we must find that any reasonable man, looking at the evidence concerning plaintiff's conduct in the light most favorable to her, would conclude that she was negligent. *Baze v. Groff,* 205 Kan. 736, 473 P. 2d 59; *Schenck v. Thompson,* 201 Kan. 608, 443 P. 2d 298; *Elliott v.*

*Chicago, Rock Island & Pac. Rld. Co.*, 203 Kan. 273, 454 P. 2d 124; *Morris v. Hoesch*, 204 Kan. 735, 466 P. 2d 272, Syl ¶ 4. The contention requires a brief review of the evidence.

The collision in question occurred at approximately 6:30 a. m., November 23, 1968, at the "T" intersection of Central and Tracy Streets in Wichita, Kansas. Central is a four-lane east-west street, and Tracy is a two-lane sandy street extending south from Central. The morning was foggy and the street was wet. Plaintiff was driving east, and had slowed to less than 25 miles per hour because she had previously slipped; the speed limit was 35. According to her testimony, she first observed the defendant's flat-bed truck approaching about one-half block away with another vehicle beside it, so that there were four headlights approaching. Defendant's truck made a left turn to the south onto Tracy Street, cutting the southeast quadrant of the intersection. (Later measurements showed it passed within two feet of the curb at the southeast corner.) Plaintiff applied her brakes and turned to the left to avoid the truck. Her car slid and the right windshield post and right side of her car collided with the right rear corner of the truck bed. Her car came to rest thirty-six feet past the east curb line of Tracy, with its left front corner slightly into the center east-bound lane. Defendant's truck stopped about forty feet south of Central on Tracy.

Defendant testified that he was traveling west on Central when he began his left turn. He signaled the turn by hand since the truck had no automatic turn signal, and withdrew his left arm when he commenced the turn since it took two hands to turn the truck. He subsequently pled guilty to making an illegal left turn.

The testimony of the driver of a vehicle which had been going west on Central next to the defendant's truck just before it turned, and that of the investigating officer, basically corroborated the foregoing abbreviated narrative.

The only factual dispute is over where the impact took place. Plaintiff's testimony was that she steered to the left, went into the center lane, and would have crossed the center line if there had not been another vehicle approaching. This is contradicted, defendant says, by testimony of the third driver that he didn't see her leave the curb lane, and by the physical evidence tending to show that defendant's truck had almost cleared the intersection at the time of impact. From this defendant infers that plaintiff must either have

been going too fast or have failed to keep the required lookout; otherwise, he argues, she could have turned in time to avoid the collision.

The jury might well have drawn such an inference, and we have no doubt they were urged to do so. The trial court, however, in ruling on defendant's motions was required to draw any possible inferences favorable to plaintiff. Those might be that plaintiff, confronted with an unexpected, quartering turn in front of her, did all that could reasonably be expected of her when she braked and turned left; after that the slippery street took over and the collision resulted. Since under the possible inferences we suggest she would be free of negligence, the trial court properly submitted the question to the jury.

Defendant's second point, his allegation of "jury misconduct," is based on a transaction reflected in the following statement made just after the jury had returned its verdict:

"THE COURT: I think I ought to put on the record the question submitted by the jury. I have advised both counsel of it. Mr. Dimon [the bailiff] informed me this afternoon that the jury wanted to know whether or not attorney fees could be added to damages, and Mr. Dimon was advised to tell the jury that damages were limited to those in the instructions."

It appears that the jury commenced its deliberations about 11:00 a. m., the exchange between court and jury occurred about 2:15 p. m., and the verdict was returned about 4:00 p. m.

From this inquiry alone, defendant would have us conclude that the jury ignored the court's instructions and improperly included some element of attorney fees in its award of damages. There is simply nothing in the record to support such a conclusion beyond this single exchange. He relies on *Dunn v. White,* 206 Kan. 278, 479 P. 2d 215, where we upheld the granting of a new trial by the trial court after post-trial testimony from seven of the twelve jurors which clearly showed that the amount of damages had been adjusted by the jury to compensate for plaintiff's attorney fees, and that it might also have been influenced by the probable presence of insurance. The record here falls far short of any such showing.

To bolster this contention he .also suggests that the verdict was excessive. The record shows, in addition to medical bills: painful injuries to her neck, hand and arm of a continuing nature; a three-month wage loss; a transfer to a lower paying job, probably permanently; and the enforced cessation of her accustomed bowling, roller-skating and water-skiing. We cannot say the jury exceeded the

bounds of reason in awarding her $6750 for her total damages, and certainly not that the amount gives rise to a presumption of misconduct.

As a final element of his "misconduct" argument defendant points to the undoubted violation of (now 1971 Supp.) K. S. A. 60-248 (*e*) which occurred when the trial court sent his message back to the jury room with the bailiff, without notice to the parties or counsel. We recently reviewed the problems posed by such ill-advised communications in *Howard v. Miller*, 207 Kan. 246, 485 P. 2d 199, where we observed:

"Since territorial days we have continuously had statutes providing that communication between court and jury as to the law in the case shall take place *in the presence of, or after notice to, the parties or their counsel.* Despite this plain injunction against private communication between judge and jury, our reports reflect many instances of its disregard, which practice has always been held to be erroneous. See, *e. g., Joseph v. National Bank,* 17 Kan. 256, 262, (1876).

"Our cases on the subject appear to fall in two categories. First, in instances in which the facts were fully disclosed and all that was communicated by the judge to the jury was set forth in the record, and it affirmatively appeared no prejudice resulted from the communication, the irregularity was held not to be reversible error. . . .

"The second category of cases is comprised of those in which it was impossible to know whether prejudice resulted from the error and a new trial was therefore ordered. . . ." (pp. 249-50.)

This case, in our view, clearly falls in the first, "no prejudice" category. What was done appears in the record; the court did not give a further instruction but advised the jury they should be bound by those already given. As defendant says in his brief, he "does not contend that the trial court's answer was incorrect," but only that if he had known of the inquiry he might have had some further instruction to suggest. His only showing of possible prejudice is that the incident may have contributed in some way to the alleged misconduct on the part of the jury—a concept we have previously rejected. We therefore conclude that the trial court did not err in refusing to grant a new trial.

The judgment is affirmed.

APPROVED BY THE COURT.