No. 51,494

STATE OF KANSAS, *Appellee,* v. THOMAS WEIGEL, *Appellant.*

(612 P.2d 636)

Opinion filed June 14, 1980.

*Gary Lee Kaufman*, of Nuss & Kaufman, of Great Bend, argued the cause and was on the brief for the appellant.

*Ivan D. Krug*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Thomas Weigel was convicted by a jury of aggravated robbery, kidnapping and the theft of a car. He appeals and raises many points to be considered by this court.

The above charges arose from a robbery of the Nekoma State Bank in Rush County, Kansas. Defendant Weigel and four accomplices participated in the robbery, which occurred on January 5, 1979, at 4:00 p.m. A white over red car was stolen from the Rush County Livestock Auction to be used in the robbery. The robbers proceeded to the bank wearing ski masks, yellow surgical gloves and jackets. One of the accomplices was armed with a handgun. The defendant was armed with a sawed-off shotgun. Three of the bank employees were forced into the vault. Over

$2,500.00 was taken from the bank premises, plus a woman's pocketbook. The robbers closed the vault door and turned the handle thinking the vault was locked. They failed to turn the dial on the door, and those inside the vault were able to open the door. The sheriff's office was notified and the highway patrol was alerted within thirty minutes after the robbery occurred.

Within thirty minutes after the robbers left the bank they abandoned the stolen car and switched to Gary Weigel's car. It became stuck in a snow drift north of LaCrosse, Kansas. A member of the highway patrol came upon the car and its five occupants. The guns and the money from the bank had been hidden previously in a snow drift by the side of the road. The vehicle and the five occupants were searched and released. The occupants checked into a motel at Hays, Kansas. The money was later retrieved from the snow drift by the defendant and two of his fellow participants.

After word of the bank robbery was received by the officers all five of those who participated were rounded up and arrested. The actual arrests occurred both on the day of the robbery and the day following. All except the defendant entered pleas of guilty to the charges. Lonnie Hill, who participated in the robbery, turned State's evidence and testified against the defendant. According to Hill's testimony the defendant planned the robbery and was the leader. The defendant was the one who owned and was armed with the sawed-off shotgun. Money taken from the bank included some marked money which was taken from the defendant when he was arrested. A lady's brown purse, owned by one of the bank employees, was found in or around the abandoned stolen car. The sheriff located ski masks, yellow surgical gloves, and jackets worn during the robbery. These were found in an area surrounding the abandoned stolen car. Some of the stolen money in money sacks was located above ceiling tile in a motel room rented by one or more of the robbers. There can be little doubt as to the sufficiency of the evidence to convict the defendant and no claim of insufficiency is made. The foregoing evidence and other evidence to be mentioned later will bear upon the issues to be decided in this appeal.

The first issue on appeal concerns the admissibility of the marked money taken from the defendant at the time of his arrest. The defendant's attack on admitting the money in evidence is

based upon his claim that the issuance of the arrest warrant was not based upon probable cause. He argues that if the arrest was not legal any evidence obtained as a result of the arrest was also illegal and should not have been admitted in evidence at the trial. He cites *Wilbanks v. State,* 224 Kan. 66, 579 P.2d 132 (1978), and *Aguilar v. Texas,* 378 U.S. 108, 12 L.Ed.2d 723, 84 S.Ct. 1509 (1964).

The warrant was issued upon a sworn complaint with a two- and one-half page single-spaced statement sworn to by a special agent of the Kansas Bureau of Investigation attached. The statement summarized the facts known and made known to the officer during interviews with various witnesses, including two of the suspects and fellow officers.

The United States Supreme Court has stated that the substance of any definition of probable cause is the reasonable ground for belief of guilt. *Brinegar v. United States,* 338 U.S. 160, 175, 93 L.Ed. 1879, 69 S.Ct. 1302, *reh. denied* 338 U.S. 839, 94 L.Ed. 513, 70 S.Ct. 31 (1949). Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. *State v. Evans,* 219 Kan. 515, 521, 548 P.2d 772 (1976); *State v. Barnes,* 220 Kan. 25, 28, 551 P.2d 815 (1976). Probable cause exists if the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed. *State v. Lamb,* 209 Kan. 453, 467, 497 P.2d 275 (1972); *State v. Morin,* 217 Kan. 646, 648, 538 P.2d 684 (1975). We have read the affidavit upon which the warrant was issued and find the allegations therein sufficient to justify issuance of the warrant upon probable cause.

Although the defendant in his brief challenges the veracity of the affidavit, he failed at the trial court level to follow the proper procedure as outlined in *Franks v. Delaware,* 438 U.S. 154, 57 L.Ed.2d 667, 98 S.Ct. 2674 (1978), to obtain a hearing thereon. He failed to allege that the matter contained in the affidavit was a known falsehood or made in reckless disregard for the truth. The statements challenged must be those of the affiant's and not of the affiant's informants. The challenger must offer proof or proffer evidence as to what statements are known falsehoods and name the witnesses who will testify under oath that the matters are lies.

Because of these obvious failures defendant is precluded from going behind the statements in the affidavit at this late date.

Defendant next attacks the hair sample evidence. Hairs taken from defendant matched hairs taken from one of the ski masks. In this case the State obtained an order of the court directing that hair samples be cut from defendant's head. There was no violation of Fourth Amendment rights against unreasonable search and seizure. The order of the trial court had the same effect as a lawful search warrant and under the procedure outlined in this opinion the use of the hair samples was lawful. *State v. Buckner,* 223 Kan. 138, 140, 574 P.2d 918 (1977); *State v. Coe,* 223 Kan. 153, 161, 574 P.2d 929 (1977).

Defendant's next point concerns his request that the court give an instruction on aiding a felon. Defendant had maintained throughout his trial that his actions, after he awoke from a drunken stupor and drove his companions away from the bank, were for the purpose of helping one of the female robbers get out of the state. He argues that this was his theory of defense and as such the court should have instructed thereon. We cannot agree. Aiding a felon is a separate criminal offense proscribed by K.S.A. 21-3812. It is not error to refuse an instruction thereon when the accused has not been charged with said crime and it is not a lesser included offense of the crimes of which he has been charged. Defendant was not charged with the crime of aiding a felon. The crime was not a lesser included offense of any of the crimes of which he was charged. See K.S.A. 21-3107. Therefore, the point is without merit.

Defendant next argues the evidence is insufficient to sustain a conviction of kidnapping. K.S.A. 21-3420 in pertinent part provides:

"Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:

"(a) [Not applicable.]

"(b) To facilitate flight or the commission of any crime;"

The actions of defendant in forcing the bank employees into a bank vault and attempting to lock the vault door were for the purpose of permitting the defendant and others to flee the scene and did constitute the crime of kidnapping. The facts were sufficient to bring this case within the guidelines of *State v. Buggs,* 219 Kan. 203, 547 P.2d 720 (1976). See also *State v.*

*Nelson,* 223 Kan. 572, 575 P.2d 547 (1978). The employees were confined. A confinement was not inherent in the nature of the crime and its purpose was to substantially lessen the risk of early detection. The point is without merit.

The defendant next objects to the testimony of Joann Phillips who was permitted to identify the defendant by his height, general appearance, piercing blue eyes and the sound of his voice. Objection is made to the sufficiency of the foundation for the testimony, and because the witness was not qualified as an expert in voice identification. As a foundation for this testimony, the prosecutor elicited from the witness the amount of time she was with the robber (10 to 15 minutes), the fact they were directly facing each other at a close distance, the care with which she noted the tone of his voice and voice inflections when he spoke to her in the bank, his height and build, and the fact she had listened carefully to defendant's voice as he spoke in the courtroom. A witness need not be an expert in voice identification to testify as to the identity of the defendant by means of tone and voice inflections. It is the general rule that testimony by a witness that he or she recognized the accused by his voice is admissible in evidence, provided only the witness has some basis for comparison of the accused's voice with the voice which he or she identifies as the accused's. It is not necessary for the witness to qualify as an expert. The completeness of the identification goes to the weight of the evidence and not its admissibility. Mere hesitancy or uncertainty on the part of a witness in identifying an accused by voice recognition affects only the weight and not the admissibility of the testimony. *State v. Nixon,* 111 Kan. 601, Syl. ¶ 4, 207 Pac. 854 (1922); *State v. Visco,* 183 Kan. 562, 567, 331 P.2d 318 (1958); 70 A.L.R.2d 995; 29 Am. Jur. 2d, Evidence § 368.

Defendant objects to an additional instruction requested by the jury and given by the court after the case had been submitted to the jury for its consideration. The jury asked for a definition of the word "permanent" as used in "permanently deprived." The trial court gave the following definition taken from K.S.A. 1979 Supp. 21-3110(6):

"To 'deprive permanently' means to:

"(*a*) Take from the owner the possession, use or benefit of his or her property, without an intent to restore the same; or

"(*b*) Retain property without intent to restore the same or with intent to restore it

to the owner only if the owner purchases or leases it back, or pays a reward or other compensation for its return; or

"(c) Sell, give, pledge or otherwise dispose of any interest in property or subject it to the claim of a person other than the owner."

If after the jury has retired for deliberation it desires further information as to the law or evidence pertaining to the case, it may communicate its request through the bailiff to the court, following which the court, after notice to counsel for the parties, may consider and make such provision for a response as the court finds to be required under the circumstances. K.S.A. 1979 Supp. 60-248(e); *Tos v. Handle,* 209 Kan. 139, 142, 495 P.2d 896 (1972); *State v. Bandt,* 219 Kan. 816, 823, 549 P.2d 936 (1976).

Defendant simply argues that no instruction should be given to the jury after submission of the case. He does not quarrel with the statutory definition given. The authority to give such an instruction is provided by statute and is in direct contradiction to defendant's argument. The point is without merit.

Defendant claims it was error for the court to permit one of the accomplices, Lonnie Hill, to give rebuttal testimony. Hill was called to testify that the story recited by the defendant while a witness in his own behalf was not true. Rebuttal evidence is that which contradicts evidence introduced by an opposing party. It may tend to corroborate evidence of a party who first presented evidence on the particular issue, or it may refute or deny some affirmative fact which an opposing party has attempted to prove. It may be used to explain, repel, counteract or disprove testimony or facts introduced by or on behalf of the adverse party. Such evidence includes not only testimony which contradicts the witnesses on the opposite side, but also corroborates previous testimony. The use and extent of rebuttal rests in the sound discretion of the trial court and its ruling will not be reversed unless it appears the discretion has been abused to a party's prejudice. *State v. Shultz,* 225 Kan. 135, 138, 587 P.2d 901 (1978); *State v. Lovelace,* 227 Kan. 348, Syl. ¶ 7, 607 P.2d 49 (1980). This was proper rebuttal testimony.

The defendant complains that the State failed to conduct a preliminary hearing on the charges within ten days as provided by K.S.A. 1979 Supp. 22-2902. We note that under the statute either party on motion shall be granted a 15 day continuance. The hearing was originally set for the 11th day following defendant's arrest and an attorney had been appointed previously for him.

Prior to the hearing another attorney advised the court he was going to represent defendant. The latter attorney later withdrew because of a conflict. The date for preliminary hearing, originally set for January 19, was postponed on motion until January 29 because of this confusion. The defendant had been arrested on January 6, 1979, and the hearing was held on January 29, 23 days after his arrest. The defendant made no objection to this delay on January 29. He was bound over, entered a plea of not guilty, and was later convicted by a jury.

The time limitations in K.S.A. 1979 Supp. 22-2902 are directory, and inconsequential delay beyond the time specified for holding the preliminary hearing will not justify a dismissal. *State v. Fink,* 217 Kan. 671, 676, 538 P.2d 1390 (1975). Sufficiency of the preliminary hearing including its timeliness may be challenged only by motion to dismiss under K.S.A. 22-3208. *State v. Smith,* 215 Kan. 34, 37, 38, 523 P.2d 691 (1974). A motion under K.S.A. 22-3208 to dismiss or to grant appropriate relief must be filed no later than 20 days after arraignment. Failure to raise a question as to the sufficiency of the preliminary hearing by such a motion constitutes a waiver and precludes review on appeal. K.S.A. 22-3208(3). *State v. Smith,* 215 Kan. at 37.

The defendant next urges a mistrial based upon alleged misconduct of a juror and of the prosecuting attorney. He alleges they conversed during a recess in the trial. This charge was called to the attention of the court, a hearing was held, and the juror admitted saying "good morning" to the attorney. No conversation was remembered by either of these parties. They assured the court that nothing was said concerning the pending case. Defendant came forward with no evidence to sustain his charges. The point is without substance. See *State v. Coburn,* 220 Kan. 743, 747, 556 P.2d 376 (1976), and *State v. Jakeway,* 221 Kan. 142, 148, 558 P.2d 113 (1976).

The final point raised by defendant concerns the length of consecutive sentences which he contends is constitutionally impermissible as cruel and unusual punishment. He was sentenced to a term of 15 years to life for aggravated robbery, 15 years to life for kidnapping, and 3 to 10 years for theft. All sentences were made to run consecutively for an aggregated minimum term of 33 years. K.S.A. 1979 Supp. 22-3717 provides:

"(2) The Kansas adult authority shall hold a parole hearing for any inmate who

achieves eligibility for a parole hearing in accordance with this subsection (2).

"(A) The following inmates shall be eligible for parole by the Kansas adult authority after fifteen (15) calendar years of confinement: (i) Any inmate sentenced to imprisonment for conviction of a class A felony, including sentences pursuant to K.S.A. 1979 Supp. 21-4618 [mandatory sentence for crime involving use of firearm]; (ii) any inmate who receives consecutive sentences that total to twenty-nine (29) years or more for the aggregated minimum term;  . . ."

The defendant's contention, that he is not subject to parole and must serve out the entire 33 year aggregate minimum term, is in error as indicated by the terms of the above statute. Defendant may achieve eligibility for parole after fifteen calendar years of confinement.

Defendant attempts to justify his claim of cruel and unusual punishment on the ground his accomplices, who pled guilty, received lighter sentences which were made to run concurrently. At sentencing there was evidence in the presentence report which indicated that defendant had at least two prior felony convictions. The evidence indicated that defendant was the leader, planned the bank robbery, and was armed with a sawed-off shotgun during the bank robbery and kidnapping. His role in the actual commission of the crimes justified more severe punishment.

Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity. However, after applying the factors bearing on the question, which this court outlined in *State v. Freeman,* 223 Kan. 362, Syl. ¶ 2, 574 P.2d 950 (1978), we cannot say the aggregate minimum sentences in this case shocks our collective conscience or offends our fundamental notion of human dignity. Comparing the sentences received by defendant with sentences meted out in other states for these same crimes the defendant's sentences are not disproportionate. See Annot., Cruel Punishment—Length of Sentence 33 A.L.R.3d § 5, p. 359.

At this point we note the recent case of *Rummel v. Estelle,* 445 U.S. 263, 63 L.Ed.2d 382, 100 S.Ct. 1133 (1980). Rummel was sentenced to life imprisonment upon conviction of a felony which involved obtaining $120.75 by false pretenses. Defendant had previously been convicted of two felonies, one for defrauding another of $80.00 by use of a credit card and the second for forging a check in the amount of $28.36. The United

States Supreme Court in a 5-4 decision held that the life sentence imposed upon the defendant pursuant to the Texas recidivist statute did not constitute cruel and unusual punishment under the Eighth and Fourteenth Amendments, notwithstanding defendant's claim that life imprisonment was "grossly disproportionate" to the three property-related felonies that formed the basis for his sentence. The thrust of that decision appears to indicate a retreat by the high court from *Weems v. United States,* 217 U.S. 349, 54 L.Ed. 793, 30 S.Ct. 544 (1910), and its progeny. In *Rummel* the majority opinion states:

"[O]ne could argue without fear of contradiction by any decision of this Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative. . . ." 445 U.S. at 274.

In light of the foregoing pronouncement this court has reexamined its position taken in *State v. Freeman,* 223 Kan. 362, and believes *Freeman* should not be changed. We are not inclined to give up our judicial prerogative of examining disproportionate sentences to determine which sentences may be impermissibly disproportionate to the crimes for which they are inflicted.

We now hold that under Section 9 of the Kansas Bill of Rights the prohibition against the infliction of cruel or unusual punishment relates to more than inherent cruelty in the method of punishment. Some of the criteria which are to be considered in determining what is cruel or unusual punishment as to the length of a sentence include excessiveness, disproportionality, lack of necessity, unacceptability to society, and arbitrariness of infliction. None of these criteria are present in the present case and the sentences imposed in this case are approved.

The judgment is affirmed.