IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,861

STATE OF KANSAS,
*Appellee*,

v.

NATHANIEL L. HILL,
*Appellant.*

SYLLABUS BY THE COURT

1.

Courts have statutory authority to correct an illegal sentence at any time, so an illegal sentence issue may be considered for the first time on appeal.

2.

A person convicted of a crime is sentenced in accordance with the sentencing provisions in effect at the time the crime was committed.

3.

Where the sentence announced from the bench differs from the sentence described in the journal entry, the orally pronounced sentence controls.

4.

The meaning of a sentence may be derived from the context of the entirety of the sentencing hearing.

1

5.

An off-grid sentence is followed by parole, not postrelease supervision. Therefore, it is error for a sentencing court to order lifetime postrelease supervision for a person convicted of an off-grid crime.

6.

K.S.A. 21-4635 is not a statute that authorizes a sentence, but rather only a part of the procedural framework by which the sentence was determined. Thus, the fail-safe protocols of K.S.A. 2020 Supp. 21-6628(c) do not apply under the facts of this case.

Appeal from Montgomery District Court; JEFFREY D. GOSSARD, judge. Opinion filed August 13, 2021. Affirmed in part and vacated in part.

*Kristen B. Patty*, of Wichita, was on the brief for appellant, and *Nathaniel L. Hill*, appellant pro se, was on the supplemental brief.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

WILSON, J.: Nathaniel L. Hill appeals the district court's denial of his motion to modify sentence, where he argues his hard 50 sentence should be modified according to K.S.A. 2020 Supp. 21-6628(c). He now also argues that the orally pronounced sentence was incorrect and thus illegal, which requires a remand for clear resentencing to match the journal entry.

FACTS AND PROCEDURAL HISTORY

Hill was convicted by a jury of capital murder, first-degree murder, possession of marijuana with intent to sell, possession of drug paraphernalia, and failure to purchase a tax stamp. The facts underlying his convictions can be found in this court's opinion in his direct appeal. *State v. Hill*, 290 Kan. 339, 340-44, 228 P.3d 1027 (2010). In 2005, the district court ordered a hard 50 life sentence for the first-degree murder conviction, plus 28 months for the drug charges; it deferred sentencing on the capital murder conviction until the constitutionality of that sentence was resolved in *State v. Marsh*, 278 Kan. 520, 102 P.3d 445 (2004), and *Kansas v. Marsh*, 548 U.S. 163, 126 S. Ct. 2516, 165 L. Ed. 2d 429 (2006).

When Hill's sentencing resumed in 2008, the State withdrew its notice of intent to seek the death penalty. The district court granted the State's motion to vacate Hill's first-degree murder sentence in accordance with *State v. Scott*, 286 Kan. 54, 122, 183 P.3d 801 (2008). Sentencing on the remaining capital murder conviction was set for October 2008.

At that subsequent sentencing hearing, there appeared to be some initial confusion on the part of the district court. After clarifying that the purpose of the hearing was to sentence Hill for the capital murder conviction, the district court inquired why they were going to talk about facts in the record to support a hard 50 when "capital murder is life imprisonment without possibility of parole." Both the State and defense counsel corrected the district court, agreeing that upon review of the statute, the mandatory sentence was actually life imprisonment without possibility of parole for 50 years. The district court did not challenge that clarification.

Unfortunately, this correction was not enough to let the district court remain on course. The record goes on to reflect that the district court appeared at times to be

3

confused. But review of the record also shows the district court understood there was only one legal sentence Hill could receive, and it relied on counsel to make sure it imposed that sentence.

After hearing from friends and family of the victims, the district court gave the following ruling:

> "Mr. Hill, for the offense of capital murder . . . that you were convicted of by a jury and a finding of guilty imposed by the [c]ourt[,] is that you serve a sentence of life imprisonment without possibility of parole. I'm going to run that sentence consecutive with the other sentences previously imposed by the [c]ourt."

Immediately after that pronouncement, the State offered that it would not ask for restitution because it did not believe Hill would have any ability to pay "in the 50 years he'll be in prison." The district court did not challenge the State's presumption that Hill could have parole in 50 years.

Like the State, defense counsel also understood Hill was receiving the legal sentence, as shown by this exchange regarding time served:

> "THE COURT: . . . Since you're not—not to be eligible for parole, I'm not sure where credit for time served comes into the picture.
> "[Counsel]?
> "[HILL'S COUNSEL]: Judge, under the statute that was in place at the time the crime occurred, there was parole eligibility after a minimum mandatory sentence of 50 years. So credit for time served would be applicable in that sense.
> "THE COURT: Okay. Credit for time served."

4

Likewise, the journal entry of judgment shows a hard 50 sentence: "Life imprisonment without possibility of parole for 50 years." It also states that Hill's "Postrelease Period" is "Life."

In August 2019, Hill filed a pro se motion requesting modification of his sentence pursuant to K.S.A. 2019 Supp. 21-6628(c), on the premise that the court's sentence without benefit of a jury requires resentencing pursuant to the terms of this statute. After receiving supplemental pleadings from both Hill and the State, the district court denied Hill's motion. It is from that denial that he now appeals.

For the first time on appeal, Hill also asserts that his sentence was illegal, providing a second reason this case should be remanded for resentencing. We will address this issue first.

ANALYSIS

*Hill's sentence is not illegal and does not require resentencing.*

On appeal, Hill argues that the district court judge pronounced a sentence from the bench of life imprisonment without possibility of parole, which exceeds the authority of K.S.A. 2002 Supp. 21-4635(a) and is illegal. If correct, it would require resentencing. Hill agrees that the only available sentence is life imprisonment without possibility of parole *for 50 years*.

*Preservation*

Hill's only motion before the district court was not a motion to correct an illegal sentence, and the district court did not consider or make a ruling on this argument. In

5

fact, Hill agreed with the State that his motion below should not be construed as a motion to correct an illegal sentence.

Regardless, courts have statutory authority to correct an illegal sentence at any time, so an illegal sentence issue may be considered for the first time on appeal. *State v. Sartin*, 310 Kan. 367, 375, 446 P.3d 1068 (2019).

*Standard of Review*

Whether a sentence is illegal is a question of law subject to unlimited review. *State v. Donahue*, 309 Kan. 265, 267, 434 P.3d 230 (2019). Interpretation of statutes is also a matter of law subject to unlimited review. *State v. Jamerson*, 309 Kan. 211, 214, 433 P.3d 698 (2019).

*Discussion*

An illegal sentence is one that is: imposed by a court without jurisdiction; does not conform to the statutory provision either in the character or the term of the authorized punishment; or is ambiguous with respect to the time and manner in which it is to be served. K.S.A. 2020 Supp. 22-3504(c)(1); *State v. Buford*, 307 Kan. 73, 74, 405 P.3d 1194 (2017).

As Hill points out and the State concedes, a defendant's sentence becomes final and appealable when the district court pronounces it from the bench, and where the sentence announced from the bench differs from what is later described in the journal entry, the orally pronounced sentence controls. *State v. Northern*, 304 Kan. 860, 862, 375 P.3d 363 (2016); *Abasolo v. State*, 284 Kan. 299, 304, 160 P.3d 471 (2007).

6

Hill argues that his sentence, as pronounced at the bench, is illegal because it does not conform to the term authorized by statute. A person convicted of a crime is sentenced in accordance with the sentencing provisions in effect at the time the crime was committed. *State v. Overton*, 279 Kan. 547, 561, 112 P.3d 244 (2005). The applicable statute for sentencing, in effect at the time Hill committed his crimes, would have been K.S.A. 2002 Supp. 21-4635, which reads in relevant part:

"(a) . . . [I]f a defendant is convicted of the crime of capital murder and a sentence of death is not imposed . . . the court shall determine whether the defendant shall be required to serve a mandatory term of imprisonment of 40 years or for crimes committed on and after July 1, 1999, a mandatory term of imprisonment of 50 years or sentenced as otherwise provided by law."

Both parties agree that because the State was not seeking the death penalty, the only available sentence according to the 2002 statute was a hard 50. This is contrasted by the statute in effect at the time Hill was sentenced—but *not* applicable to his conviction—which mandates that a defendant convicted of an identical crime committed in 2008 would be subject to a sentence of life without the possibility of parole. See K.S.A. 2008 Supp. 21-4635(a).

Hill does not argue that there was any ambiguity in the sentence. Rather, he contends that the district court clearly pronounced a sentence which had not yet been authorized by statute at the time Hill committed his crimes. Hill relies solely on the district court saying he would "serve a sentence of life imprisonment without possibility of parole."

The State argues that when taken in context of the larger sentencing hearing, it becomes clear that the district court imposed a sentence of life imprisonment without possibility of parole for 50 years. Both the State and Hill's counsel discussed Hill's parole

7

eligibility after 50 years which the district court acknowledged, and the district court awarded credit for time served at the request of Hill's counsel specifically because he would be eligible for parole after 50 years.

Although it was not addressed by either party, a panel of the Kansas Court of Appeals addressed an identical issue in an unpublished opinion from 2005 when it decided *Davidson v. Pryor*, No. 112,800, 2015 WL 5224820, at *4 (Kan. App. 2015) (unpublished opinion).

In *Davidson*, the defendant was convicted of premeditated first-degree murder which, under the circumstances, mandated a sentence of 25 years to life. The sentence pronounced from the bench was simply a "life sentence," which the panel interpreted as being silent as to the minimum term of imprisonment before the defendant was eligible for parole. However, the journal entry listed the correct sentence reflecting parole eligibility after 25 years. *Davidson*, 2015 WL 5224820, at *4.

That panel held that both the Kansas Supreme Court and other Court of Appeals panels have allowed a journal entry to "clarify a sentence where the sentence pronounced from the bench was silent on the matter and the law mandated a certain result," relying on *Love v. State*, 208 Kan. 553, 560-63, 124 P.3d 32 (2005). Both parties agree that the only legal sentence for Hill's conviction is a hard 50, which is reflected on the journal entry of judgment.

If we were to look at only the words Hill wants us to address, we agree that the sentencing judge left out "for 50 years." But from the context of the sentencing hearing as a whole, it is sufficiently clear to everyone present that Hill was to receive the mandatory hard 50 sentence and they acted accordingly.

8

We make no pretense that the district court had a perfect understanding of the only legal sentence available to Hill from the start. But it also seemed to know its deficiencies and often took course correction from counsel to ensure it was imposing the legal sentence.

At the start of the hearing, both parties outlined the legal, mandatory sentence for the district court. Later, the State explained it would not seek restitution because it did not believe Hill would have the ability to pay "in the 50 years" minimum that he is required to serve. The district court did not challenge this presumption or correct the State, which is an important indication it had sentenced Hill to a life sentence without possibility of parole for 50 years.

Likewise, Hill's counsel requested—and the district court granted—credit for time served, which was only relevant because Hill received the hard 50. When the district court granted credit for time served, it was another concrete indication that the sentence imposed did contemplate that Hill could face parole after a minimum of 50 years. In other words, the meaning of the sentence pronounced from the bench is the sentence reflected in Hill's journal entry. There is ultimately no ambiguity and Hill is serving a legal sentence.

Hill also argues the journal entry must show that he is subject to lifetime parole, rather than lifetime postrelease supervision. The district judge did not orally pronounce any condition of postrelease supervision, but the journal entry does show a "Postrelease Supervision Term" of "LIFE."

Hill is correct that an off-grid sentence is followed by parole and not postrelease supervision and a sentencing court cannot order lifetime postrelease supervision when a person has been convicted of an off-grid crime. *State v. Cash*, 293 Kan. 326, 330-31, 263

9

P.3d 786 (2011). Accordingly, we vacate the lifetime postrelease portion of his sentence reflected in the journal entry of judgment.

*The district court did not err in denying Hill's motion to modify sentence.*

Hill argues pro se that the district court erred in denying his motion for resentencing because K.S.A. 2020 Supp. 21-6628(c) requires modification of his sentence. This issue is controlled by this court's opinion in *State v. Coleman*, 312 Kan. 114, 472 P.3d 85 (2020), and, more recently, *State v. Appleby*, 313 Kan. 352, 485 P.3d 1148 (2021).

*Standard of Review*

This question presents issues of statutory interpretation and constitutional claims. Both are questions of law subject to unlimited review. *Coleman*, 312 Kan. at 117.

*Discussion*

Hill argues he is entitled to sentence modification under the provisions of K.S.A. 2020 Supp. 21-6628(c), which reads:

> "In the event the mandatory term of imprisonment *or any provision of chapter 341 of the 1994 Session Laws of Kansas authorizing such mandatory term is held to be unconstitutional by the supreme court of Kansas or the United States supreme court*, the court having jurisdiction over a person previously sentenced shall cause such person to be brought before the court and shall modify the sentence to require no mandatory term of imprisonment and shall sentence the defendant as otherwise provided by law." (Emphasis added).

Hill was sentenced for capital murder, and that sentence can be found under a provision of chapter 341 of the 1994 Session Laws. The provision—K.S.A. 21-4635—references a judicial finding of a hard 50 sentence. Though this statute was later held to be unconstitutional by this court after applying *Alleyne* in *State v. Soto*, 299 Kan. 176, 201-04, 322 P.3d 334 (2014), Hill does not argue that *Alleyne* applies retroactively to require reversal of his sentence. Rather, Hill argues *Alleyne* simply operated as a trigger to activate the portion of K.S.A. 2020 Supp. 21-6628 italicized above, which then in turn triggers the remaining requirements of the statute to mandate resentencing under the statute itself.

Thus, Hill argues that K.S.A. 2020 Supp. 21-6628(c) creates *its own* jurisdictional path which the district court must use to modify his sentence. However, this court has already determined in *Coleman* that K.S.A. 2020 Supp. 21-6628 does not provide Hill relief.

This court recently upheld *Coleman* in *Appleby.* In both cases, and again here, we interpret K.S.A. 2020 Supp. 21-6628 to be a "'fail-safe provision' that '[b]y its clear and unequivocal language . . . applies only when the term of imprisonment or the statute authorizing the term of imprisonment are found to be unconstitutional.'" *Appleby*, 313 Kan. at 357 (quoting *Coleman*, 312 Kan. at 124).

A life sentence has never been deemed categorically unconstitutional. Moreover, a majority of this court found that K.S.A. 21-4635 was not the statute authorizing the term of life imprisonment, but was only part of the procedural framework by which the enhanced sentence was determined. *Appleby*, 313 Kan. at 357-58; *Coleman*, 312 Kan. at 124. It does not trigger the fail-safe provision of K.S.A. 2020 Supp. 21-6628.

11

Even if K.S.A. 2020 Supp. 21-6628(c) provided the path suggested by Hill, that path would not help him here. As stated in *Appleby*'s concurrence, "only two possibilities exist as a procedure authorizing [a] collateral attack on [a defendant's] sentence:  a motion to correct an illegal sentence under K.S.A. 2020 Supp. 22-3504 or a motion under K.S.A. 2020 Supp. 60-1507." *Appleby*, 313 Kan. at 361 (Luckert, C.J., concurring). However, a sentence imposed in violation of *Alleyne* does not fall withing the definition of an "illegal sentence" that may be addressed under K.S.A. 2020 Supp. 22-3504. *Coleman*, 312 Kan. at 120 (citing *State v. Brown*, 306 Kan. 330, Syl. ¶ 1, 393 P.3d 1049 [2017]; *State v. Moncla*, 301 Kan. 549, Syl. ¶ 4, 343 P.3d 1161 [2015]). Only a finding of exceptional circumstances sufficient to show manifest injustice would make a motion under K.S.A. 60-1507 timely, and this court has already held that *Alleyne* cannot provide such manifest injustice. *Kirtdoll v. State*, 306 Kan. 335, 341, 393 P.3d 1053 (2017).

CONCLUSION

The district court properly denied Hill's motion for sentence modification. We affirm the judgment of the district court. Because Hill's off-grid sentence is followed by parole and not postrelease supervision, we vacate the lifetime postrelease supervision shown in Hill's journal entry of judgment.

Affirmed in part and vacated in part.

12