IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,246

STATE OF KANSAS,
*Appellee*,

v.

CURTIS L. COLEMAN JR.,
*Appellant*.

SYLLABUS BY THE COURT

1.

In postconviction sentence modification proceedings there must be a procedural vehicle for presenting an argument to the court.

2.

The rule of law declared in *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), that the Sixth Amendment to the United States Constitution requires any fact which increases a sentence beyond the mandatory minimum must be submitted to a jury and proven beyond a reasonable doubt, cannot be applied retroactively to invalidate a sentence that was final when the *Alleyne* decision was released.

3.

A sentence imposed in violation of the constitutional holding in *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), does not fit within the definition of an illegal sentence that may be addressed with a K.S.A. 22-3504(1) motion to correct an illegal sentence.

4.

For a K.S.A. 60-1507 motion filed in a case that was final when *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), was decided, the change in the law effected in *Alleyne* cannot provide the exceptional circumstances required to permit a successive motion or demonstrate the manifest injustice necessary to permit an untimely motion.

5.

The change in law effected in *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), does not trigger K.S.A. 2019 Supp. 21-6628(c). The *Alleyne* Court did not find either the term of imprisonment or the statute authorizing the term of imprisonment to be unconstitutional.

Appeal from Wyandotte District Court; J. DEXTER BURDETTE, judge. Opinion filed September 11, 2020. Affirmed.

*Curtis L. Coleman Jr.,* appellant pro se, was on the briefs.

*Lois Malin,* assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

WARD, J.: Curtis L. Coleman Jr. takes this appeal from the district court's decision summarily denying his postsentence motion to modify sentence. Determining that no legal avenue exists for the relief requested by Coleman, we affirm the district court's denial of Coleman's motion.

*Trial, Sentencing, and Direct Appeals*

On March 11, 1999, a jury convicted Coleman of premeditated first-degree murder and three counts of aggravated assault for crimes he committed in October 1998 at age 15. Prior to trial, he was certified for adult prosecution. On May 14, 1999, the district court sentenced Coleman to a hard 40 life sentence on the murder charge pursuant to K.S.A. 21-4635. The court added 13 additional months in prison for the aggravated assault charges.

Coleman appealed to this court challenging the constitutionality of the adult certification statute as well as the constitutionality of his hard 40 life sentence. He also asserted that the district court committed instructional error and that the prosecutor made improper statements in final argument. And he argued that the district court improperly considered several nonstatutory aggravating factors when imposing the hard 40 life sentence.

In *State v. Coleman*, 271 Kan. 733, 26 P.3d 613 (2001) (*Coleman I*), this court upheld the convictions and rejected his several constitutional challenges. But we found that the district court erred in sentencing him to a hard 40 life sentence by considering two aggravating factors not found in the statute, namely the victim's age and the victim's state of mind between the time of her injury and the time of her death. The case was remanded for resentencing on the murder charge.

On September 14, 2001, Coleman was again sentenced to a hard 40 life term for first-degree murder, a sentence later affirmed in *State v. Coleman*, No. 88,159, 2003 WL 21664787 (Kan. 2003) (unpublished opinion) (*Coleman II*). The United States Supreme

Court denied certiorari. *Coleman v. Kansas*, 540 U.S. 993, 124 S. Ct. 494, 157 L. Ed. 2d 393 (2003).

*Current Motion*

On January 5, 2018, over 14 years after his direct appeals were finalized, Coleman filed a pro se motion seeking to have his hard 40 life sentence modified "to require no mandatory term of imprisonment." His motion cited *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), and *State v. Soto*, 299 Kan. 102, 322 P.3d 334 (2014), in support of the contention that his sentence violated his Sixth Amendment right to a jury trial because the trial judge and not a jury made the factual findings necessary for sentence enhancement. He asserted that K.S.A. 2019 Supp. 21-6628(c) was the statutory mechanism by which his constitutionally defective sentence could be remedied. The State filed a response to Coleman's motion and Coleman filed a reply.

On August 15, 2018, the district judge (the same district judge who sentenced Coleman 17 years earlier) filed a memorandum decision summarily denying Coleman's motion and request for hearing. The judge briefly noted the history of Coleman's trial, sentencing, and direct appeals, as well as a motion Coleman had earlier filed pursuant to K.S.A. 60-1507. Without addressing the applicability of K.S.A. 2019 Supp. 21-6628(c), the district judge ruled that Coleman's reliance on *Alleyne* was misplaced, noting that the rule of law announced in *Alleyne* "cannot be applied retroactively to cases that were final when that case was decided as in the defendant's underlying case."

Coleman appeals the district court's denial of his motion. Because he received a life sentence for the first-degree murder charge, the jurisdiction of this court is proper under K.S.A. 2019 Supp. 22-3601(b)(3)-(4).

ANALYSIS

*Standard of Review*

In his petition for review, Coleman contends the district court misconstrued his motion for sentence modification and, in doing so, committed a "manifest error of both fact and law . . . thereby constituting an abuse of discretion." He cites *State v. Santos-Vega*, 299 Kan. 11, 321 P.3d 1 (2014), in support of an abuse of discretion standard of review. He also cites *State v. Burnett*, 297 Kan. 447, 301 P.3d 698 (2013), for the proposition that jurisdictional and statutory interpretation issues are questions of law over which an appellate court's scope of review is unlimited.

The State compares Coleman's motion for sentence modification to a motion to correct illegal sentence pursuant to K.S.A. 22-3504, asserting that when the district court summarily denies a motion to correct illegal sentence a reviewing court applies a de novo standard of review, citing, *State v. Gray*, 303 Kan. 1011, 1013-1014, 368 P.3d 1113 (2016). The State also characterizes this appeal as one involving statutory interpretation, namely K.S.A. 2019 Supp. 21-6628(c), a question of law over which the appellate courts have unlimited review, citing, *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

We conclude this appeal involves constitutional issues as well as questions of statutory interpretation. Constitutional claims are questions of law subject to de novo review. *State v. Engelhardt*, 280 Kan. 113, 138, 119 P.3d 1148 (2005). Interpretation of a statute is a question of law over which appellate courts likewise have unlimited review. *State v. Bryant*, 310 Kan. 920, 921, 453 P.3d 279 (2019).

When Coleman was resentenced in 2001 following remand by this court, the district court found the existence of one or more aggravating factors by a preponderance of the evidence and imposed a hard 40 life sentence. The finding of these aggravating factors was not submitted to a jury for consideration.

Coleman argued in his direct appeal that his Sixth Amendment jury trial right had been violated per *Apprendi v. New Jersey*, 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), in which the United States Supreme Court held: "Taken together, these rights [to a speedy and public trial, by an impartial jury] indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" That Court added: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

The *Coleman I* court rejected his Sixth Amendment argument. *Coleman I*, 271 Kan. at 741. The issue had already been considered and resolved. In *State v. Conley*, 270 Kan. 18, Syl. ¶ 3, 11 P.3d 1147 (2000), the court held:

> "Imposition of the K.S.A. 21-4638 hard 40 sentence based on a fact not found by the jury does not increase a defendant's maximum sentence of imprisonment for life imposed under K.S.A. 21-4706(c). The hard 40 sentence limits the lower end of the sentence. Defendant's hard 40 sentence violates neither the Due Process Clause of the United States Constitution, nor his right to trial by jury under the 6th Amendment to the United States Constitution or § 5 of the Kansas Constitution Bill of Rights."

The *Conley* court acknowledged *Apprendi*'s Sixth Amendment ruling but found that *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986),

6

controlled the issue rather than *Apprendi*. *Conley*, 270 Kan. at 34. In *McMillan,* the United States Supreme Court upheld the constitutionality of a Pennsylvania statute under which the sentencing court was required to impose a mandatory minimum sentence of five years if it found by a preponderance of the evidence that the defendant visibly possessed a firearm during commission of the underlying crime. The *McMillan* Court concluded that the firearm possession finding was a sentencing factor to be determined by the court rather than an element of the underlying crime which the State must prove to a jury beyond a reasonable doubt. 477 U.S. at 85-93.

Two years after *Conley*, the United States Supreme Court decided *Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002). That decision upheld a federal sentencing scheme which provided for increased mandatory minimum sentences based on a district court's finding that the defendant possessed, brandished, or discharged a firearm during commission of the underlying offense. Relying on *McMillan* and seeking to reconcile *Apprendi*, the *Harris* Court characterized the firearm finding as a judicial sentencing factor rather than an element of the underlying crime. 536 U.S. at 557, 564-565. However, the same year the United States Supreme Court decided *Harris* it relied on *Apprendi* to hold that Arizona's capital sentencing scheme was unconstitutional because it permitted a judge and not a jury to find and balance aggravating versus mitigating circumstances in determining a sentence of death. *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002).

A decade later the landscape on this issue shifted when the United States Supreme Court decided *Alleyne,* 570 U.S. 99. The *Alleyne* Court looked again at the federal sentencing scheme it had previously reviewed in *Harris*. It held that because the sentencing court's finding of an aggravating factor produces a higher range of penalty, it

"conclusively indicates that the fact is an element of a distinct and aggravated crime. It must, therefore, be submitted to the jury and found beyond a reasonable doubt.

"Because there is no basis in principle or logic to distinguish facts that raise the maximum from those that increase the minimum, *Harris* was inconsistent with *Apprendi*. It is, accordingly, overruled." *Alleyne*, 570 U.S. at 116.

Less than a year after *Alleyne* was decided, this court in *State v. Soto*, 299 Kan. 102, 322 P.3d 334 (2014), looked again at the constitutionality of the Kansas hard 50 sentencing scheme (hard 40 for crimes prior to July 1, 1999). Based on *Alleyne* and also in part on *Ring,* we found:

"Kansas' statutory procedure for imposing a hard 50 sentence as provided in K.S.A. 21-4635 violates the Sixth Amendment to the United States Constitution as interpreted in *Alleyne* . . . because it permits a judge to find by a preponderance of the evidence the existence of one or more aggravating factors necessary to impose an increased mandatory minimum sentence, rather than requiring a jury to find the existence of the aggravating factors beyond a reasonable doubt. [Citation omitted.]" *Soto*, 299 Kan. 102, Syl. ¶ 9.

*Modification of Coleman's Sentence*

As noted above, Coleman's motion asks that his sentence be modified "to require no mandatory term of imprisonment." He seeks elimination of the hard 40 aspect of his life sentence. Although he is not explicitly requesting retroactive application of *Alleyne* and *Soto*, he has no remedy here unless the rule of law established in *Alleyne* is applied to his case.

In postconviction proceedings seeking sentence modification, "there must be a procedural vehicle for presenting the argument to the court." *State v. Trotter*, 296 Kan. 898, 905, 295 P.3d 1039 (2013). Motions for sentence modification should be dismissed for lack of jurisdiction unless there is statutory language authorizing the specific requested relief. *State v. Anthony*, 274 Kan. 998, 1002, 58 P.3d 742 (2002). Coleman

cites K.S.A. 2019 Supp. 21-6628(c) as the mechanism for his requested relief, but pro se postconviction pleadings must be analyzed by their content, not necessarily by their label. *State v. Redding*, 310 Kan. 15, 18, 444 P.3d 989 (2019). We therefore consider the several ways in which Coleman's motion may be viewed.

It should first be noted that Coleman's motion is not a proper motion to correct an illegal sentence under K.S.A. 22-3504, since a sentence imposed in violation of *Alleyne* does not fall within the definition of an "illegal sentence" that may be addressed by K.S.A. 22-3504. *State v. Brown*, 306 Kan. 330, Syl. ¶ 1, 393 P.3d 1049 (2017); *State v. Moncla*, 301 Kan. 549, Syl. ¶ 4, 343 P.3d 1161 (2015).

Second, even if Coleman's motion is analyzed as one brought under K.S.A. 60-1507, it also fails. That statute provides a mechanism for collateral attack of an unconstitutional sentence, but it has limitations. A motion for relief under this statute must be brought within one year following the conclusion of any direct appeals, including the denial of a petition for writ of certiorari to the United States Supreme Court. K.S.A. 2019 Supp. 60-1507(f)(1). This time limitation may be extended by the court "only to prevent a manifest injustice." K.S.A. 2019 Supp. 60-1507(f)(2).

Coleman's direct appeals in this case were final in 2003. As noted, he was resentenced to a new hard 40 term following remand by the *Coleman I* court. His appeal of the new hard 40 sentence was denied in 2003 by the *Coleman II* court. And, the United States Supreme Court denied his petition for writ of certiorari later that same year. All of this occurred 10 years before *Alleyne* was decided in June 2013.

In *Kirtdoll v. State*, 306 Kan. 335, Syl. ¶ 1, 393 P.3d 1053 (2017) (*Kirtdoll II*), this court specifically addressed the retroactive application of *Alleyne* to cases already final when *Alleyne* was decided. Kirtdoll was convicted in 2004 of first-degree murder and sentenced to a hard 50 life sentence. His conviction and sentence were affirmed in a

9

direct appeal where one of the issues he raised was an *Apprendi* challenge to his hard 50 life sentence. *State v. Kirtdoll*, 281 Kan. 1138, 1151, 1153, 136 P.3d 417 (2006) (*Kirtdoll I*).

Following his direct appeal Kirtdoll filed K.S.A. 60-1507 motions in 2007 and 2010. Both were denied by the district court. The Court of Appeals affirmed each denial. *Kirtdoll v. State*, No. 100,880, 2009 WL 2766290 (Kan. App. 2009) (unpublished opinion); *Kirtdoll v. State*, No. 107,385, 2013 WL 517812 (Kan. App. 2013) (unpublished opinion).

In 2013, Kirtdoll filed what he styled a "Motion to Vacate Sentence." The district court analyzed the motion under K.S.A. 22-3504 and under K.S.A 60-1507. It determined that the motion was not proper under K.S.A. 22-3504 because it was an attack upon the statutory scheme used to arrive at the hard 50 sentence rather than an attack upon the actual sentence itself. The district court further determined that his motion was not proper under K.S.A. 60-1507 because it was impermissibly successive as well as untimely.

The *Kirtdoll II* court agreed with the district court and held that the rule of law declared in *Alleyne* cannot be applied retroactively to invalidate a sentence that was final when the *Alleyne* decision was released. That court further held that when a K.S.A. 60-1507 motion is filed in a case that was final prior to *Alleyne*, the change in law effected by *Alleyne* cannot provide the exceptional circumstances required to permit a successive motion or demonstrate the manifest injustice necessary to permit an untimely motion. 306 Kan. at 341.

*K.S.A. 2019 Supp. 21-6628(c)*

Having determined that Coleman has no remedy under K.S.A. 22-3504 or K.S.A. 60-1507, and that *Alleyne* and *Soto* do not apply retroactively to his case, the only

question that remains is whether K.S.A. 2019 Supp. 21-6628(c), the specific provision relied upon by Coleman, changes that. We conclude it does not. That statute in its entirety reads:

"(a) In the event the term of imprisonment for life without the possibility of parole or any provision of K.S.A. 21-6626 or 21-6627, and amendments thereto, authorizing such term is held to be unconstitutional by the supreme court of Kansas or the United States supreme court, the court having jurisdiction over a person previously sentenced shall cause such person to be brought before the court and shall modify the sentence to require no term of imprisonment for life without the possibility of parole and shall sentence the defendant to the maximum term of imprisonment otherwise provided by law.

"(b) In the event a sentence of death or any provision of chapter 252 of the 1994 Session Laws of Kansas authorizing such sentence is held to be unconstitutional by the supreme court of Kansas or the United States supreme court, the court having jurisdiction over a person previously sentenced shall cause such person to be brought before the court and shall modify the sentence and resentence the defendant as otherwise provided by law.

"(c) In the event the mandatory term of imprisonment or any provision of chapter 341 of the 1994 Session Laws of Kansas authorizing such mandatory term is held to be unconstitutional by the supreme court of Kansas or the United States supreme court, the court having jurisdiction over a person previously sentenced shall cause such person to be brought before the court and shall modify the sentence to require no mandatory term of imprisonment and shall sentence the defendant as otherwise provided by law."

Although this court has not specifically interpreted K.S.A. 2019 Supp. 21-6628(c), we did analyze the predecessor statute of K.S.A. 2019 Supp. 21-6628(b) in *State v. Thurber*, 308 Kan. 140, 420 P.3d 389 (2018), a death penalty case. The *Thurber* court held that a provision contained in the Kansas death penalty scheme, K.S.A. 2016 Supp. 21-6622(h), unconstitutionally limited the class of intellectually disabled persons qualifying for protection against execution. 308 Kan. 140, Syl. ¶ 17. Thurber argued that

11

because the court concluded subsection (h) was unconstitutional, the entire death penalty scheme was invalid, and his sentence of death should be commuted to a sentence of life in prison. Thurber based his argument on K.S.A. 21-4629, which provided:

> "In the event a sentence of death or any provision of this act authorizing such sentence is held to be unconstitutional by the supreme court of Kansas or the United States supreme court, the court having jurisdiction over a person previously sentenced shall cause such person to be brought before the court and shall modify the sentence and resentence the defendant as otherwise provided by law."

The *Thurber* court compared a similar Florida statute, Section 775.082(2) of the Florida Statutes (2015), which provided in pertinent part:

> "In the event the death penalty in a capital felony is held to be unconstitutional by the Florida Supreme Court or the United States Supreme Court, the court having jurisdiction over a person previously sentenced to death for a capital felony shall cause such person to be brought before the court, and the court shall sentence such person to life imprisonment as provided in subsection (1)."

This statute was discussed by the Florida Supreme Court in *Hurst v. State*, 202 So.3d 40, 63-66 (Fla. 2016), which addressed whether an appellant's death sentence was required to be commuted to life imprisonment based on the United States Supreme Court's decision in *Hurst v. Florida*, 577 U.S. 92, 136 S. Ct. 616, 193 L. Ed. 2d 504 (2016). There the United States Supreme Court held that a provision of the Florida capital sentencing scheme, under which an advisory jury makes recommendations to a judge who then made the critical findings needed for imposition of a death sentence, violated the Sixth Amendment right to a jury trial.

The Florida Supreme Court interpreted the Florida statute as one providing a "fail safe" sentencing option if the death penalty, as a penalty, was declared categorically to be an unconstitutional sentence. *Hurst,* 202 So. 3d at 66. Because the United States Supreme

Court invalidated only a portion of the Florida death penalty scheme, the Florida court held that its "fail safe" statute did not automatically operate to commute death sentences to life imprisonment without parole. 202 So. 3d at 63-66.

The *Thurber* court held that K.S.A. 21-4629 likewise operates as a "fail safe" if the death sentence itself or a provision "authorizing such sentence" is deemed unconstitutional. *Thurber*, 308 Kan. at 234. The *Thurber* court concluded that K.S.A. 21-4629 was not implicated because K.S.A. 2016 Supp. 21-6622(h) was not a provision authorizing a death sentence. Nor did that court find that the death penalty itself was unconstitutional. Thurber was therefore not entitled to have his death sentence automatically converted to a life sentence. 308 Kan. at 234-35.

We reach the same conclusion today with respect to K.S.A. 2019 Supp. 21-6628(c) as the *Thurbe*r court did with the predecessor of K.S.A. 2019 Supp. 21-6628(b). We have said that the legislative intent governs if that intent can be ascertained from the statute's language. *State v. Pulliam*, 308 Kan. 1354, 1364, 430 P.3d 39 (2018). Criminal statutes, although construed strictly against the State, must be interpreted in a way that is reasonable and sensible to effectuate the legislative design and the true intent of the law. *State v. Keel*, 302 Kan. 560, Syl. ¶ 5, 357 P.3d 251 (2015).

The statute in question here is a fail-safe provision. By its clear and unequivocal language it applies only when the term of imprisonment or the statute authorizing the term of imprisonment are found to be unconstitutional. Neither circumstance has occurred.

The statute under which the district court in Coleman's case found the existence of aggravating factors necessary to impose a hard 40 life sentence, K.S.A. 21-4635, was not a statute authorizing his hard 40 life sentence. Instead, it was part of the procedural framework by which the enhanced sentence was determined. His hard 40 life sentence

was authorized by virtue of his commission of premeditated first-degree murder, an offense qualifying for such sentence under Kansas law.

And regarding Coleman's term of imprisonment itself, Kansas' hard 40 and hard 50 sentences have never been determined to be categorically unconstitutional. This court continues to uphold such sentences in appropriate cases. See e.g. *State v. Hilt*, 307 Kan. 112, 129, 406 P.3d 905 (2017); *State v. Alford*, 308 Kan. 1336, 1342, 429 P.3d 197 (2018); and *State v. Kahler*, 307 Kan. 374, 414, 410 P.3d 105 (2018). And such sentences continue to be imposed in qualifying cases in Kansas.

CONCLUSION

The district court correctly denied Coleman's motion for sentence modification. *Alleyne* and *Soto* do not operate retroactively to provide a remedy in this case. And K.S.A. 2019 Supp. 21-6628(c) does not apply. The judgment of the district court is affirmed.

MICHAEL E. WARD, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Ward was appointed to hear case No. 120,246 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.