IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 121,951

STATE OF KANSAS,
*Appellee*,

v.

RONALD JOHNSON,
*Appellant*.

SYLLABUS BY THE COURT

1.

In postconviction sentence modification proceedings, there must be a procedural vehicle for presenting an argument to the court.

2.

Applying *State v. Coleman*, 312 Kan. 114, 472 P.3d 85 (2020), to the circumstances of this case, there is no procedural vehicle that allows a court to revisit a sentence that was final when *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), was decided.

Appeal from Wyandotte District Court; JENNIFER L. MYERS, judge. Opinion filed April 30, 2021. Affirmed.

*Wendie C. Miller*, of Wichita, was on the briefs for appellant.

*Daniel G. Obermeier,* assistant district attorney, *Mark A. Dupree Sr.,* district attorney, and *Derek Schmidt*, attorney general, were on the briefs for appellee.

PER CURIAM:  Ronald Johnson attacks the portion of his life sentence for first-degree premeditated murder that sets a minimum sentence of 50 years. Johnson argues he is entitled to resentencing under K.S.A. 2020 Supp. 21-6628(c), formerly K.S.A. 21-4639, because the sentencing judge engaged in judicial fact-finding to determine that aggravating factors justified a minimum sentence of 50 years instead of the 25-year minimum that would otherwise apply.

K.S.A. 2020 Supp. 21-6628(c) does not create an avenue or independent means by which a convicted person can challenge his or her underlying sentence. We thus affirm the district court's denial of Johnson's request for relief.

FACTS AND PROCEDURAL BACKGROUND

A jury convicted Johnson of first-degree premeditated murder for a murder committed in 2001. The district court judge, without jury findings, imposed a hard 50 life sentence after concluding any mitigating circumstances did not outweigh aggravating circumstances. Johnson appealed and challenged his sentence as unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed.2d 435 (2000). This court rejected his *Apprendi* argument and affirmed Johnson's conviction and sentence on direct appeal. *State v. Johnson*, 284 Kan. 18, 22-23, 159 P.3d 161 (2007).

Johnson later filed several motions for habeas relief under K.S.A. 60-1507. None led to any relief. See *Johnson v. State*, No. 117,323, 2017 WL 3824255 (Kan. App. 2017) (unpublished opinion); *Johnson v. State*, No. 108,309, 2013 WL 5303530 (Kan. App. 2013) (unpublished opinion); *Johnson v. State*, No. 102,952, 2011 WL 867686 (Kan. App. 2011) (unpublished opinion). In the most recent of these, Johnson unsuccessfully argued for retroactive application of *Alleyne v. United States,* 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013). The Court of Appeals panel rejected his appeal based on

2

this court's decision in *Kirtdoll v. State*, 306 Kan. 335, 341, 393 P.3d 1053 (2017) (*Alleyne* cannot be applied retroactively to cases already final and its prospective-only change in the law cannot provide the exceptional circumstances that would justify a successive 60-1507 motion or the manifest injustice necessary to excuse the untimeliness of a 60-1507 motion). See *Johnson*, 2017 WL 3824255, at *1.

In 2018, Johnson filed a motion "[i]nvoking sentence modification pursuant to K.S.A. 21-4639 renumbered K.S.A. 21-6628(c) (2011)." Johnson argued the rule announced in *Alleyne* rendered unconstitutional the sentencing statutes under which he was sentenced so that he must be resentenced under K.S.A. 2020 Supp. 21-6628(c). The district court denied relief and this appeal followed.

While this appeal was pending, this court decided *State v. Coleman*, 312 Kan. 114, 472 P.3d 85 (2020). There, we held that K.S.A. 2020 Supp. 21-6628(c) does not create a new avenue or independent means by which a convicted person can challenge his or her underlying sentence. 312 Kan. at 121-24. Both parties filed Rule 6.09 letters addressing *Coleman*. (2021 Kan. S. Ct. R. 40.) We then requested supplemental briefing.

This court has jurisdiction under K.S.A. 2020 Supp. 22-3601(b)(3) (allowing appeal of life sentence to Supreme Court, except for sentence imposed under K.S.A. 21-4643 or K.S.A. 2020 Supp. 21-6627).

ANALYSIS

*Standard of Review*

This case involves issues of statutory interpretation and constitutional claims. Both are questions of law subject to de novo or unlimited review. *Coleman*, 312 Kan. at 117.

3

*History of Caselaw on Judicial Fact-finding*

Johnson raises the same complaint as had Curtis L. Coleman Jr.: A judge, not a jury, found aggravating factors that served as the basis for increasing the minimum term of their life sentences from 25 years to either 40 years in Coleman's case or 50 years in Johnson's. Like Coleman, Johnson contends his sentence should be vacated because the Sixth Amendment to the United States Constitution requires a jury determine these aggravating factors. See *Coleman*, 312 Kan. at 117-18; *Johnson*, 284 Kan. at 22-23.

When a judge sentenced Johnson, Kansas law allowed judicial fact-finding. But, about seven years after Johnson's direct appeal ended, this court held it was unconstitutional for a judge to increase the minimum sentence a defendant must serve based on findings made by the judge, not a jury. See *State v. Soto*, 299 Kan. 102, 122-24, 322 P.3d 334 (2014) (citing *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 [2013]).

This court in *Coleman* detailed this history. 312 Kan. at 118-19. We need not discuss all the detail here; a short history provides context for our holding that, like Coleman, Johnson has no right to relief.

*Coleman* began with a discussion of *Apprendi*, 530 U.S. 466. In *Apprendi*, the United States Supreme Court held that any fact other than the existence of a prior conviction "that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. That holding applied explicitly only to the determination of statutory *maximum* sentences and, that same year, this court declined to extend the *Apprendi* rule to findings made by a district court judge before imposing a mandatory *minimum*—the complaint

4

Johnson makes. See *State v. Conley*, 270 Kan. 18, 11 P.3d 1147 (2000) (relying on *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S. Ct. 2411, 91 L. Ed. 2d 67 [1986]).

Two years later, the United States Supreme Court walked the line between *Apprendi* and *McMillan* by characterizing a judge's finding that a defendant possessed, brandished, or discharged a firearm during the commission of an offense as a judicial sentencing factor rather than an element of the crime. *Harris v. United States*, 536 U.S. 545, 556, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002). And that same year, the Supreme Court held unconstitutional Arizona's capital sentencing statutes that allowed a judge to find and balance mitigating circumstances in determining whether to impose a death sentence. *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002).

Ten years later, the United States Supreme Court overruled *Harris* in *Alleyne*. The Court found "no basis in principle or logic to distinguish facts that raise the maximum from those that increase the minimum." *Alleyne*, 570 U.S. at 116. Thus, the Court held that any fact that increases the minimum sentence must "be submitted to the jury and found beyond a reasonable doubt." 570 U.S. at 116.

This court extended *Alleyne* to Kansas' hard 50 sentencing statutes (hard 40 for crimes committed before July 1, 1999) in *Soto*, 299 Kan. at 122-24. We later held the rule of law declared in *Alleyne* cannot be applied retroactively to invalidate a sentence that was final before the date of the *Alleyne* decision. *Kirtdoll*, 306 Kan. 335, Syl. ¶ 1; see *Johnson*, 2017 WL 3824255, at *1.

*Modification of Johnson's Sentence*

While that history explains the legal basis for Johnson's complaint, it does not address the pivotal question in his appeal: Can he obtain relief from his sentence given

5

that it was final several years before our decision in *Soto* and the United State Supreme Court's decision in *Alleyne*? The finality of his sentence means no court has jurisdiction to modify the sentence unless there is a jurisdictional basis for presenting the argument to the court. *Coleman*, 312 Kan. at 119-20 (quoting *State v. Trotter*, 296 Kan. 898, 905, 295 P.3d 1039 [2013]). Requests for a sentence modification must be "dismissed for lack of jurisdiction unless there is statutory language authorizing the specific requested relief." 312 Kan. at 120 (citing *State v. Anthony*, 274 Kan. 998, 1002, 58 P.3d 742 [2002]).

Given that, the *Coleman* decision explored the potential ways a court could have jurisdiction to hear the claim of someone like Johnson or Coleman who seeks relief from the hard 40 or 50 minimum term of his or her life sentence. Johnson filed a motion "[i]nvoking sentence modification pursuant to K.S.A. 21-4639 renumbered K.S.A. 21-6628(c) (2011)." In *Coleman*, we considered and rejected K.S.A. 2020 Supp. 21-6628 as a procedural path for relief. *Coleman*, 312 Kan. at 121-24. We also considered other potential procedural mechanisms because "pro se postconviction pleadings must be analyzed by their content, not necessarily by their label." 312 Kan. at 120. We held that no procedure offered Johnson a path to jurisdiction. See *Coleman*, 312 Kan. at 121-24. Johnson's briefing does not persuade us to depart from *Coleman*'s holdings.

One of the procedural mechanisms discussed in *Coleman* is a motion to correct an illegal sentence under K.S.A. 2020 Supp. 22-3504. That statute allows courts to consider an illegal sentence at any time, which includes after a direct appeal is final. But what constitutes an illegal sentence is not open ended, and this court has made clear that "a sentence imposed in violation of *Alleyne* does not fall within the definition of an 'illegal sentence' that may be addressed by K.S.A. 22-3504." *Coleman*, 312 Kan. at 120 (citing *State v. Brown*, 306 Kan. 330, Syl. ¶ 1, 393 P.3d 1049 [2017]; *State v. Moncla*, 301 Kan. 549, Syl. ¶ 4, 343 P.3d 1161 [2015]). Johnson offers no argument that counters this holding in *Coleman*, *Brown*, and *Moncla*.

6

*Coleman* also discussed and rejected another mechanism that can lead to post-judgment relief from a sentence: a motion for habeas relief under K.S.A. 60-1507. This statute grants a court jurisdiction to consider a collateral attack on an unconstitutional sentence. Generally, a movant is allowed only one motion and that motion must be filed within one year of the movant's direct appeal ending. Exceptions apply, however. A court can allow a second motion if the movant establishes exceptional circumstances, and the one-year limitation does not apply if a court finds it necessary to lift the bar to prevent a manifest injustice. See *Coleman*, 312 Kan. at 120; K.S.A. 2020 Supp. 60-1507(c), (f).

Coleman filed his 60-1507 motion seeking to set aside his hard 50 sentence more than one year after the conclusion of his final appeal and after he had filed two previous 60-1507 motions. He claimed manifest injustice and exceptional circumstances justified allowing him to file this third motion more than a year after his appeal was final. But this court rejected his argument based on *Kirtdoll*, 306 Kan. at 341. There, this court had held "for 60-1507 motions to be considered hereafter, *Alleyne*'s prospective-only change in the law cannot provide the exceptional circumstances that would justify a successive 60-1507 motion or the manifest injustice necessary to excuse the untimeliness of a 60-1507 motion." *Kirtdoll*, 306 Kan. at 341. We thus held that Coleman could not obtain relief through a 60-1507 motion. *Coleman*, 312 Kan. at 120-21.

Perhaps because of this line of cases and the fact a 60-1507 motion would be successive and out-of-time, Johnson advances no argument to counter *Kirtdoll*'s and *Coleman*'s holding. But we still mention this procedural mechanism because courts sometimes treat a pro se motion as a motion filed under 60-1507 even if labeled as something else. Yet, consistent with *Coleman* and *Kirtdoll*, converting Johnson's motion "[i]nvoking sentence modification pursuant to K.S.A. 21-4639 renumbered K.S.A.

7

21-6628(c) (2011)" to a 60-1507 motion would not benefit Johnson because he has no right to relief under K.S.A. 2020 Supp. 60-1507.

Finally, like Coleman, Johnson offers K.S.A. 2020 Supp. 21-6628(c) as a basis for relief. In fact, Johnson solely relies on this provision. But we concluded in *Coleman* that K.S.A. 2020 Supp. 21-6628(c) does not provide defendants in Johnson's position a mechanism for relief. 312 Kan. at 121-24. We interpreted K.S.A. 2020 Supp. 21-6628 to be a "fail-safe provision" that "[b]y its clear and unequivocal language . . . applies only when the term of imprisonment or the statute authorizing the term of imprisonment are found to be unconstitutional." 312 Kan. at 124.

Johnson disagrees with *Coleman*'s statutory analysis. He argues K.S.A. 2001 Supp. 21-4635 authorized his sentence and this court ruled K.S.A. 21-4635 was unconstitutional in *Soto*, 299 Kan. at 124. *Coleman*, however, held K.S.A. 21-4635 "was part of the procedural framework by which the enhanced sentence was determined" and the root authorization for Coleman's sentence was the statute that provided for a life sentence. *Coleman*, 312 Kan. at 124. Here, Johnson committed premeditated murder, and the Legislature has authorized a life sentence for someone convicted of that crime. See K.S.A. 2001 Supp. 21-3439; K.S.A. 2001 Supp. 21-4706. A life sentence has "never been determined to be categorically unconstitutional" and "such sentences continue to be imposed in qualifying cases in Kansas." *Coleman*, 312 Kan. at 124. Thus, Johnson's sentence does not trigger the "fail-safe" provision of K.S.A. 2020 Supp. 21-6628(c).

K.S.A. 2020 Supp. 21-6628(c) does not require resentencing Johnson.

8

*Due Process Argument Fails*

Johnson also asserted in his pro se motion that he had a due process right to be resentenced under the mandate of K.S.A. 2020 Supp. 21-6628. He asserts that this right arises under the Fifth Amendment to the United States Constitution.

Johnson's due process argument turns on our agreeing with him that K.S.A. 2020 Supp. 21-6628(c) requires he be resentenced. We have rejected his arguments that the statute applies to him and mandates that he be resentenced. Simply put, Johnson is not owed any process under the statute that he has not received.

CONCLUSION

The district court properly denied Johnson's motion for sentence modification. There is no procedural mechanism by which a Kansas court may reconsider his sentence. *Alleyne* and *Soto* do not operate retroactively to afford a remedy. And K.S.A. 2020 Supp. 21-6628(c) does not apply. We affirm the judgment of the district court.

\* \* \*

LUCKERT, C.J., concurring:  In *State v. Coleman*, 312 Kan. 114, 472 P.3d 85 (2020), I joined this court's statutory analysis of K.S.A. 2020 Supp. 21-6628(c). Ronald Johnson and defendants in other cases now persuade me we erred in *Coleman* when we held that K.S.A. 21-4635 "was not a statute authorizing [a] hard 40 life sentence" and that Curtis L. Coleman Jr.'s life sentence was instead "authorized by virtue of his commission of premeditated first-degree murder, an offense qualifying for such sentence under Kansas law." *Coleman*, 312 Kan. at 124. Yet my reexamination of the statutory analysis

9

does not lead me to conclude that Johnson (or Coleman) is entitled to relief. I, therefore, concur in the decision to affirm the district court.

K.S.A. 2020 Supp. 21-6628(c), formerly K.S.A. 2001 Supp. 21-4639, provides:

"In the event the mandatory term of imprisonment or any provision of chapter 341 of the 1994 Session Laws of Kansas authorizing such mandatory term is held to be unconstitutional by the supreme court of Kansas or the United States supreme court, the court having jurisdiction over a person previously sentenced shall cause such person to be brought before the court and shall modify the sentence to require no mandatory term of imprisonment and shall sentence the defendant as otherwise provided by law."

Johnson asks us to focus on the meaning of the word "authorizing." This court previously did so in *Smith v. Printup*, 254 Kan. 315, 339, 866 P.2d 985 (1993). *Printup* included two definitions. First, Webster's New International Dictionary defined "authorize" as: "'to endorse, empower, justify, or permit by or as if by some recognized or proper authority (as custom, evidence, personal right, or regulating power) . . . : SANCTION.'" *Printup*, 254 Kan. at 339 (quoting Webster's Third New International Dictionary 146 [1986]). Second, Black's Law Dictionary's defined it to mean:

"'To empower; to give a right or authority to act. To endow with authority or effective legal power, warrant, or right. [Citation omitted.] To permit a thing to be done in the future. It has a mandatory effect or meaning, implying a direction to act.

"'"Authorized" is sometimes construed as equivalent to "permitted"; or "directed", or to similar mandatory language. Possessed of authority; that is, possessed of legal or rightful power, the synonym of which is "competency." [Citation omitted.]'" *Printup*, 254 Kan. at 339 (quoting Black's Law Dictionary 133 [6th ed. 1990]).

Current definitions are consistent. E.g., Black's Law Dictionary 165 (11th ed. 2019) ("To give legal authority; to empower <he authorized the employee to act for

him>. 2. To formally approve; to sanction <the city authorized the construction project>."); Merriam Webster ("1: to endorse, empower, justify, or permit by or as if by some recognized or proper authority such as custom, evidence, personal right, or regulating power) a custom *authorized* by time [;] 2: to invest especially with legal authority**:** EMPOWER//She is *authorized* to act for her husband."), at https://www.merriam-webster.com/dictionary/ authorize.

Under these definitions, "authorizing" as used in K.S.A. 2020 Supp. 21-6628(c) means having or empowering with legal authority. I thus interpret K.S.A. 2020 Supp. 21-6628(c) to be implicated when any provision authorizing or empowering a court to impose a hard 50 sentence (or another sentence above the statutory minimum) is held to be unconstitutional.

The statutory framework when Johnson committed first-degree premeditated murder provided for a life sentence. See K.S.A. 2001 Supp. 21-3401 (first-degree murder is an off-grid person felony); K.S.A. 2001 Supp. 21-4706(c) (sentence for violating K.S.A. 21-3401 is imprisonment for life). The sentencing statutes empowered the court to impose a mandatory term of imprisonment of 50 years if, after hearing evidence on aggravating and mitigating circumstances, the court concluded the aggravating circumstance or circumstances were not outweighed by mitigating circumstances. See K.S.A. 2001 Supp. 21-4635(a); K.S.A. 2001 Supp. 21-4638. If the court concluded the aggravating circumstance or circumstances were outweighed by mitigating circumstances, the defendant was sentenced "as provided by law," which meant a life sentence with no minimum. K.S.A. 2001 Supp. 21-4635(b), (c); K.S.A. 2001 Supp. 21-4638. If the sentencing court imposed no minimum sentence, a defendant still served at least 25 years based on statutory terms defining when he or she became parole eligible. See K.S.A. 2001 Supp. 22-3717(b)(1) (inmates sentenced for capital murder or

11

premeditated first-degree murder parole eligible "after serving 25 years of confinement, without deduction of any good time credits").

These statutes only authorized or empowered the district court to impose a hard 50 life sentence on Johnson *after* the district court weighed aggravating and mitigating circumstances as provided in K.S.A. 2001 Supp. 21-4635. The district court had no authority to impose a hard 50 sentence without first walking through the weighing of circumstances provided in K.S.A. 2001 Supp. 21-4635, a provision of chapter 341 of the 1994 Session Laws of Kansas. L. 1994, ch. 341. Thus, K.S.A. 2001 Supp. 21-4635 authorized Johnson's sentence.

This court held K.S.A. 21-4635 unconstitutional in *State v. Soto*, 299 Kan. 102, Syl. ¶ 9, 124, 322 P.3d 334 (2014). There, this court concluded K.S.A. 21-4635 violated the Sixth Amendment to the United States Constitution as applied in *Alleyne* "because it permits a judge to find by a preponderance of the evidence the existence of one or more aggravating factors necessary to impose an increased mandatory minimum sentence, rather than requiring a jury to find the existence of the aggravating factors beyond a reasonable doubt." 299 Kan. 102, Syl. ¶ 9. I thus conclude this court's ruling in *Soto* triggers application of K.S.A. 2020 Supp. 21-6628(c) because *Soto* held unconstitutional a provision of chapter 341 of the 1994 Session Laws of Kansas authorizing the mandatory term.

My analysis does not end there, however. Instead, it circles back to the jurisdiction issue discussed by the majority opinion. I make this circle because K.S.A. 2020 Supp. 21-6628(c), after saying a holding of the United States Supreme Court or this court that a statute authorizing a mandatory term is unconstitutional may trigger application of the statute, directs that "the court having jurisdiction over a person previously sentenced shall cause such person to be brought before the court." Under this

12

provision, Johnson must still show that a court has jurisdiction over him. K.S.A. 2020 Supp. 21-6628(c) does not itself contain any language granting jurisdiction; the language just quoted refers to a court having jurisdiction, meaning one that already has jurisdiction. Because the court that had jurisdiction to impose sentence lost jurisdiction once the judgment became final, I look back to statutes that provide jurisdiction through collateral proceedings.

As the majority discusses, only two possibilities exist as a procedure authorizing Johnson's collateral attack on his sentence: a motion to correct an illegal sentence under K.S.A. 2020 Supp. 22-3504 or a motion under K.S.A. 2020 Supp. 60-1507. A motion to correct illegal sentence does not extend to claims based on *Alleyne*, because "a sentence imposed in violation of *Alleyne* does not fall within the definition of an 'illegal sentence' that may be addressed by K.S.A. 22-3504." *Coleman*, 312 Kan. at 120 (citing *State v. Brown*, 306 Kan. 330, Syl. ¶ 1, 393 P.3d 1049 [2017]; *State v. Moncla*, 301 Kan. 549, Syl. ¶ 4, 343 P.3d 1161 [2015]). But a 60-1507 motion could grant a court jurisdiction over an *Alleyne* violation. See K.S.A. 2020 Supp. 60-1507(a) ("A prisoner in custody under sentence of a court of general jurisdiction claiming the right to be released upon the ground that the sentence was imposed in violation of the constitution or laws of the United States, . . . may, pursuant to the time limitations imposed by subsection [f], move the court which imposed the sentence to vacate, set aside or correct the sentence").

Johnson did not meet the requirements imposed by K.S.A. 2020 Supp. 60-1507(c) and (f), however, because he had filed prior 60-1507 motions and he filed this one past the time limitation. He therefore must establish exceptional circumstances and manifest injustice. But in *Kirtdoll v. State*, 306 Kan. 335, 341, 393 P.3d 1053 (2017), this court held "for 60-1507 motions to be considered hereafter, *Alleyne*'s prospective-only change in the law cannot provide the exceptional circumstances that would justify a successive

13

60-1507 motion or the manifest injustice necessary to excuse the untimeliness of a 60-1507 motion." Johnson does not ask us to overturn *Kirtdoll*.

Speaking generally, it is easy to imagine situations in which a court could find exceptional circumstances exist or that the time limitation should be extended to prevent a manifest injustice and K.S.A. 2020 Supp. 21-6628 could apply. For example, if the United States Supreme Court held that either the death penalty or the hard 50 sentencing statutes was categorically unconstitutional—that is the entire scheme was invalid rather than an aspect of it—a time extension based on manifest injustice would likely apply and the "fail safe" provisions of K.S.A. 2020 Supp. 21-6628 could be used to provide relief. See *Coleman*, 312 Kan. at 123-24 (discussing *Hurst v. State*, 202 So. 3d 40, 63-66 [Fla. 2016], which determined Florida statute like K.S.A. 2020 Supp. 21-6628 was a fail-safe provision that was not triggered when United States Supreme Court invalidated only a portion of Florida's death penalty law allowing judicial findings for imposition of a death).

Johnson does not present a situation that demands an extension to prevent manifest injustice, however. See *Kirtdoll*, 306 Kan. at 341. Nothing in K.S.A. 2020 Supp. 21-6628 demands a result different from *Kirtdoll*. See *Coleman*, 312 Kan. at 121-24; *Hurst,* 202 So. 3d at 63-66. Nor does K.S.A. 2020 Supp. 60-1507. While the Legislature provided that 60-1507 motions could challenge the constitutionality of a sentence, it also provided that, if the movant did not meet the one-year limitation period, he or she must show manifest injustice to proceed. This signals that an unconstitutional sentence does not always equate to manifest injustice. And the Legislature signaled an intent that an *Alleyne* violation did not trigger the fail-safe of K.S.A. 2020 Supp. 21-6628.

The Legislature sent this signal after the United States Supreme Court issued its *Alleyne* opinion and the Governor called a special session to address the hard 50

14

sentencing statutes. The Legislature acted expeditiously to assure courts could constitutionally impose hard 50 sentences in pending criminal cases. The Legislature's staff advised the Legislature that the *Alleyne* rule did not apply to sentences final before the *Alleyne* decision. See Preliminary Report of the 2013 Special Committee on Judiciary, 3; Revisor Office's Memorandum on the Potential Impact of *Alleyne v. United States* on Kansas Law (Aug. 16, 2013), 4. And the Legislature took no action to provide relief in those cases. While legislative inaction is not always indicative of legislative intent, see *State v. Quested*, 302 Kan. 262, 279, 352 P.3d 553 (2015), a failure to act when addressing the subject matter provides some indication the Legislature did not intend there to be relief.

Johnson failed to establish exceptional circumstances or manifest injustice as necessary to allow a court to have jurisdiction to grant him relief under K.S.A. 2020 Supp. 21-6628 based on *Alleyne*.

Johnson makes an argument that could avoid or change the *Kirtdoll* holding, however. He contends his request for relief is based not on *Alleyne* but on *Apprendi*, which the United States Supreme Court decided before he was sentenced. He asserts we need not apply *Alleyne* retroactively to provide him relief.

His argument requires a conclusion that *Alleyne* was a mere extension of *Apprendi*. But, as discussed in *Coleman*, it was not. See *Coleman*, 312 Kan. at 117-19. The United States Supreme Court itself, after deciding *Apprendi*, affirmed a sentence that imposed a mandatory minimum based on judicial fact-finding—exactly the circumstance here. *Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002). *Harris* remained the law until the Court overturned it in *Alleyne*. See *Alleyne*, 570 U.S. at 116. Had *Harris* merely been an extension of *Apprendi*, the Court could have simply

distinguished it in *Alleyne*. Instead, it overruled the holding and thus changed the law. Johnson's argument is thus unpersuasive.

In conclusion, while I now depart from one portion of the analysis in *Coleman*, I still conclude K.S.A. 2020 Supp. 21-6628(c) did not require the district court to vacate Johnson's hard 50 life sentence.

I therefore concur in the result.

WILSON and STANDRIDGE, JJ., join the foregoing concurrence.