IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 123,753

STATE OF KANSAS,
*Appellee,*

v.

DEREK BEDFORD,
*Appellant.*

SYLLABUS BY THE COURT

1.

*Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), was a substantive change in the law, not merely an extension of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

2.

A district court's failure to designate statutory aggravating circumstances in writing does not give rise to a claim of illegal sentence under K.S.A. 2020 Supp. 22-3504.

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed January 14, 2022. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, was on the brief for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.: Derek Bedford seeks review of the district court's decision to deny his motion for a sentence modification under K.S.A. 2020 Supp. 21-6628(c). We agree with the district court that *State v. Coleman*, 312 Kan. 114, 472 P.3d 85 (2020), forecloses Bedford's argument because K.S.A. 2020 Supp. 21-6628(c) does not provide him an avenue for relief. On that basis, we affirm the district court's decision to deny Bedford's motion. We also deny Bedford's newly raised claim of an illegal sentence because his argument that the sentencing court failed to comply with the "in writing" requirements of K.S.A. 21-4635(c) (Furse 1995) (in effect at the time of sentencing but since repealed) does not give rise to a claim of illegal sentence under K.S.A. 2020 Supp. 22-3504.

## FACTS

Bedford met Lisa Bradish at a bar in Kansas City in July 1996. As closing time approached, Bradish asked Bedford for a ride. The pair had sex in Bedford's car before exiting the parking lot. Bedford testified that after he began driving, Bradish began hitting him and spitting on him. Bedford stated because he was unable to stop her from swinging at him, he pulled over and ultimately hit her four times with an object, pushed her out of the car, and drove off. Bedford later told police that he "'felt kind of a bump'" as he drove away. Soon after abandoning Bradish's body, Bedford shared with several of his friends that he had killed "'some white girl in KCK.'" *State v. Bedford*, 269 Kan. 315, 316-18, 7 P.3d 224 (2000).

Bradish's body was discovered the following morning in an industrial truck yard in Kansas City, Kansas. Her body had been driven over and her clothes were partially removed and torn. An autopsy revealed that her body had been brutalized; she had dozens

2

of injuries, including a broken spinal column, hemorrhaging in the muscles of her neck, multiple rib fractures, a lacerated liver, and 35 different cuts and bruises. The pathologist believed that Bradish had been beaten, strangled, and then subjected to a massive crushing force. 269 Kan. at 316-17.

A jury convicted Bedford of first-degree murder. He received a hard 40 sentence after the district judge found aggravating factors and that those factors were not outweighed by mitigating factors, as the sentencing scheme permitted at that time. We affirmed Bedford's conviction and sentence on direct appeal. 269 Kan. at 333. Bedford's conviction and sentence became final on June 30, 2000.

In 2020 Bedford filed a pro se "Motion For Mandatory Sentence Modification Pursuant to K.S.A. 21-6628(c), (formerly K.S.A. 21-4639)." The district court, relying on *Coleman*, denied the motion, holding that "a defendant cannot utilize the K.S.A. 21-6628 process to secure a modification of a sentence."

Bedford timely appealed. Jurisdiction is proper. K.S.A. 2020 Supp. 22-3601(b)(3).

DISCUSSION

Issues of statutory interpretation and constitutional claims are questions of law subject to unlimited review. *State v. Appleby*, 313 Kan. 352, 354, 485 P.3d 1148 (2021).

We recently summarized the caselaw development that serves as the basis for Bedford's motion:

> "*Coleman* began with a discussion of *Apprendi*, 530 U.S. 466. In *Apprendi*, the United States Supreme Court held that any fact other than the existence of a prior conviction 'that increases the penalty for a crime beyond the prescribed statutory

3

maximum must be submitted to a jury, and proved beyond a reasonable doubt.' 530 U.S. at 490. That holding applied explicitly only to the determination of statutory *maximum* sentences and, that same year, this court declined to extend the *Apprendi* rule to findings made by a district court judge before imposing a mandatory minimum . . . . See *State v. Conley*, 270 Kan. 18, 11 P.3d 1147 (2000) (relying on *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S. Ct. 2411, 91 L. Ed. 2d 67 [1986]).

"Two years later, the United States Supreme Court walked the line between *Apprendi* and *McMillan* by characterizing a judge's finding that a defendant possessed, brandished, or discharged a firearm during the commission of an offense as a judicial sentencing factor rather than an element of the crime. *Harris v. United States*, 536 U.S. 545, 556, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002). And that year, the Supreme Court held unconstitutional Arizona's capital sentencing statutes that allowed a judge to find and balance mitigating circumstances in determining whether to impose a death sentence. *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002).

"Ten years later, the United States Supreme Court overruled *Harris* in *Alleyne*. The Court found 'no basis in principle or logic to distinguish facts that raise the maximum from those that increase the minimum.' *Alleyne*, 570 U.S. at 116. Thus, the Court held that any fact that increases the minimum sentence must 'be submitted to the jury and found beyond a reasonable doubt.' 570 U.S. at 116.

"This court extended *Alleyne* to Kansas' hard 50 sentencing statutes (hard 40 for crimes committed before July 1, 1999) in *Soto*, 299 Kan. at 122-24. We later held the rule of law declared in *Alleyne* cannot be applied retroactively to invalidate a sentence that was final before the date of the *Alleyne* decision. *Kirtdoll v. State*, 306 Kan. 335, Syl. ¶ 1, 393 P.3d 1053 (2017)." *State v. Trotter*, 313 Kan. 365, 367-68, 485 P.3d 649 (2021).

Given this history, no court would have jurisdiction to modify Bedford's sentence absent statutory language authorizing the requested relief because his sentence was final more than a decade before *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013). See *Coleman*, 312 Kan. at 120. Like Coleman, Bedford points only to

4

K.S.A. 2020 Supp. 21-6628(c) as such authorization for relief. But in *Coleman* we considered and rejected this procedural path, instead classifying K.S.A. 2020 Supp. 21-6628(c) as a "fail-safe" provision:

> "We have said that the legislative intent governs if that intent can be ascertained from the statute's language. Criminal statutes, although construed strictly against the State, must be interpreted in a way that is reasonable and sensible to effectuate the legislative design and the true intent of the law.
>
> "The statute in question here is a fail-safe provision. By its clear and unequivocal language it applies only when the term of imprisonment or the statute authorizing the term of imprisonment are found to be unconstitutional. Neither circumstance has occurred.
>
> "The statute under which the district court in Coleman's case found the existence of aggravating factors necessary to impose a hard 40 life sentence, K.S.A. 21-4635, was not a statute authorizing his hard 40 life sentence. Instead, it was part of the procedural framework by which the enhanced sentence was determined. His hard 40 life sentence was authorized by virtue of his commission of premeditated first-degree murder, an offense qualifying for such sentence under Kansas law.
>
> "And regarding Coleman's term of imprisonment itself, Kansas' hard 40 and hard 50 sentences have never been determined to be categorically unconstitutional. This court continues to uphold such sentences in appropriate cases. And such sentences continue to be imposed in qualifying cases in Kansas. [Citations omitted.]" 312 Kan. at 123-24.

We decline Bedford's invitation to reconsider our *Coleman* holding. We have recently and repeatedly reaffirmed *Coleman*, and Bedford only reprises the failed arguments advanced in those cases. See *State v. Hill*, 313 Kan. 1010, 1016-17, 492 P.3d 1190 (2021); *Trotter*, 313 Kan. at 370-71; *Appleby*, 313 Kan. at 357-58; *State v. Johnson*, 313 Kan. 339, 345, 486 P.3d 544 (2021).

5

Finally—in an attempt to avoid our *Kirtdoll v. State*, 306 Kan. 335, 341, 393 P.3d 1053 (2017), holding that *Alleyne* cannot be applied retroactively—Bedford asserts that *Alleyne* merely extended *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), which was in place at the time his sentence was finalized. So, his argument goes, *Apprendi* made his sentence unconstitutional, as later recognized by *Alleyne*. Chief Justice Luckert recently penned a concurrence directly rejecting this argument:

"[Defendant] makes an argument that could avoid or change the *Kirtdoll* holding, however. He contends his request for relief is based not on *Alleyne* but on *Apprendi*, which the United States Supreme Court decided before he was sentenced. He asserts we need not apply *Alleyne* retroactively to provide him relief.

"His argument requires a conclusion that *Alleyne* was a mere extension of *Apprendi*. But, as discussed in *Coleman*, it was not. See *Coleman*, 312 Kan. at 117-19. The United States Supreme Court itself, after deciding *Apprendi*, affirmed a sentence that imposed a mandatory minimum based on judicial fact-finding—exactly the circumstance here. *Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002). *Harris* remained the law until the Court overturned it in *Alleyne*. See *Alleyne*, 570 U.S. at 116. Had *Harris* merely been an extension of *Apprendi*, the Court could have simply distinguished it in *Alleyne*. Instead, it overruled the holding and thus changed the law. [Defendant's] argument is thus unpersuasive." *Appleby*, 313 Kan. at 363-64 (Luckert, C.J., concurring).

We agree. Bedford's argument that *Alleyne* simply extended *Apprendi* overlooks the fact that *Alleyne* not only extended *Apprendi*, but expressly overruled contrary precedent in doing so. Accordingly, we affirm the district court's denial of Bedford's motion for sentence modification under K.S.A. 2020 Supp. 21-6628(c).

6

Bedford's second argument—argued in the alternative and raised for the first time on appeal—is that his sentence is illegal because the sentencing court did not comply with a statutory direction to designate the aggravating circumstances in writing. We may consider this issue for the first time on appeal because K.S.A. 2020 Supp. 22-3504(a) allows an illegal sentence to be corrected at any time. *State v. Sartin*, 310 Kan. 367, Syl. ¶ 2, 446 P.3d 1068 (2019). In considering whether a sentence is illegal we exercise an unlimited standard of review. *State v. Alford*, 308 Kan. 1336, 1338, 429 P.3d 197 (2018).

The legality of a sentence is determined at the time it is pronounced. *State v. Murdock*, 309 Kan. 585, Syl., 439 P.3d 307 (2019). "Illegal sentence" means a sentence that is:

> "Imposed by a court without jurisdiction; that does not conform to the applicable statutory provision, either in character or punishment; or that is ambiguous with respect to the time and manner in which it is to be served at the time it is pronounced. A sentence is not an 'illegal sentence' because of a change in the law that occurs after the sentence is pronounced." K.S.A. 2020 Supp. 22-3504(c)(l).

The district court had jurisdiction to impose Bedford's sentence. And Bedford's sentence was not ambiguous with respect to the time and manner in which it was to be served. So Bedford may obtain relief in an illegal sentence motion only if he can show that his sentence did not conform to the applicable statutory provision.

To qualify as the relevant statutory provision implicating an illegal sentence, the statute must either "define the crime of murder, assign the category of punishment, or involve the criminal history classification axis." *Alford*, 308 Kan. at 1340. But K.S.A. 21-4635(c) (Furse 1995)—in effect at the time of sentencing and requiring aggravating circumstances to be designated in writing—was "not a statute authorizing [the] hard 40 life sentence. Instead, it was part of the procedural framework by which the enhanced

7

sentence was determined. [The] hard 40 life sentence was authorized by virtue of his commission of premeditated first-degree murder, an offense qualifying for such sentence under Kansas law." *Coleman*, 312 Kan. at 124. Accordingly, K.S.A. 21-4635(c) (Furse 1995) does not qualify as an "applicable statutory provision, either in character or punishment" that could implicate an illegal sentence. K.S.A. 2020 Supp. 22-3504(c)(l).

Affirmed.